# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FIRST QUALITY TISSUE, LLC<br><br>    Plaintiff,<br><br>    v.<br><br>IRVING CONSUMER PRODUCTS LIMITED and IRVING CONSUMER PRODUCTS, INC.,<br><br>    Defendants. | C.A. No. 19-428-RGA |

**JOINT LETTER TO THE HONORABLE RICHARD G. ANDREWS REGARDING
COMPETING PROPOSALS TO AMEND THE SCHEDULING ORDER**

Dear Judge Andrews:

Pursuant to the Court's instruction on August 17, 2020, the parties submit this letter to advise the Court of the parties' competing proposals to amend the Scheduling Order in this matter. Irving's proposed form of order is attached hereto as Exhibit 1. First Quality's proposed form of order is attached hereto as Exhibit 2.

**Irving's Position**

Irving respectfully requests to extend the current fact discovery deadline of Friday, August 21, 2020, by twelve weeks to November 13, 2020, as set forth in Irving's proposed amended scheduling order. Irving also proposes to extend the schedules for expert discovery accordingly, while shortening the expert deposition period to three weeks because it will no longer fall over the holidays and tightening the dispositive motion schedule by a week for each brief. This schedule leaves 119 days between the close of dispositive motion briefing and the pretrial conference, and does not change the pretrial conference and trial dates. Irving seeks this extension for two reasons.

First, both parties need this extension to complete the substantial amount of fact discovery that remains to be done. Plaintiff First Quality admits that an extension is necessary, but proposes only a four-week extension that would preclude service of any additional discovery. A four-week extension is insufficient and likely will require the parties to request further extensions, and the parties need to be able to follow up with further discovery requests after receiving the discovery that is currently outstanding. As explained below, First Quality is still producing documents and has not substantively responded to most of Irving's interrogatories, and none of the eighteen party depositions or six third-party depositions have occurred. Irving also disputes First Quality's privilege claims, but First Quality has not yet provided its privilege log, and this dispute should be resolved before proceeding with the implicated depositions.

Second, Irving is replacing its lead counsel at Michael Best & Friedrich LLP ("Michael Best") with new lead counsel at Latham & Watkins LLP ("Latham') and will have Michael Best withdraw shortly, after completing transfer of its files to Latham. Latham was engaged and admitted to this case last week, and has not yet received the entire case file. Latham has taken immediate action toward completing fact discovery expeditiously, arranging for production of over 118,000 pages the day after being admitted. Nevertheless, Latham requires time to get up to speed before commencing depositions. Irving should not be disadvantaged by forcing its new lead counsel to rush to complete twenty-four depositions in four weeks, as First Quality proposes, because there is sufficient room in the schedule to accommodate a twelve-week extension of fact discovery.

**I.  SUBSTANTIAL FACT DISCOVERY REMAINS TO BE DONE**

Upon entering this case, Latham was surprised to learn the extensive amount of fact discovery that remains to be done. First Quality acknowledges that the parties cannot complete fact discovery by the current August 21 deadline, but its proposal to extend fact discovery by a mere four weeks is not realistic. There would be more depositions to conduct than business days in the extended schedule, and First Quality needs to provide a tremendous amount of discovery before Irving can proceed with depositions. First Quality contends that Irving should have raised First Quality's failure to comply with its discovery obligations earlier, but putting aside the

parties' differing views about when issues were raised, the fact remains that as of today First Quality—*as plaintiff*—has not provided much of the discovery owed to Irving.

As of a week ago, First Quality had produced fewer than 8,000 pages of documents. First Quality had not substantively responded to *fourteen* of eighteen interrogatories, even though responses were due months ago. First Quality has not identified *a single Bates number* of a single document in its interrogatory responses for which it relies on Federal Rule of Civil Procedure 33(d). Although First Quality's counsel has produced privilege logs (which Irving intends to challenge) on behalf of third-party equipment manufacturers it also represents, First Quality has not produced any privilege log for its own documents. Irving also intends to update its own discovery responses, and its new lead counsel is working diligently to identify the responses that need supplementation and to prepare the supplemental responses.

A twelve-week extension is warranted so the parties can complete outstanding document and written discovery, conduct follow-up discovery as appropriate, obtain the Court's assistance to resolve any discovery disputes, and conduct the large number of depositions in an orderly fashion. Irving summarizes the status of discovery below.

Document Production.  As of August 12—nine days before the existing fact discovery deadline—First Quality had produced fewer than 8,000 pages of documents. On August 13 and 14, First Quality produced over *13,000* more pages, which represents a 170% increase in its production. First Quality has stated that it will complete its document production by August 21, but has not stated how many more documents it will produce. Irving needs sufficient time to review these documents, determine whether any follow-up discovery is needed, address remaining deficiencies with First Quality, and, if necessary, seek the Court's assistance to resolve them before taking depositions. Irving's new lead counsel at Latham quickly arranged to produce about 118,000 pages responsive to First Quality's ESI search requests, which constitutes nearly 60,000 documents, on August 14—the day after being admitted to this case.

Interrogatory Responses.  First Quality has failed to provide any substantive responses to all fourteen interrogatories in Irving's Second Set of Interrogatories (Nos. 5–18), despite serving objections months ago. In total, First Quality has only responded to four interrogatories. First Quality invoked Federal Rule of Civil Procedure 33(d) for two of those responses, but to date has not identified a single responsive document. Irving's new lead counsel intends to meet-and-confer with First Quality promptly to provide First Quality with a final opportunity to commit to providing responses and, absent this commitment, will promptly seek the Court's assistance. To be sure, discovery should be proportional, but First Quality cannot excuse its basic failure to respond to almost all interrogatories by invoking proportionality. Irving needs to receive First Quality's interrogatory responses, have a reasonable opportunity to review them, issue follow-up interrogatories if appropriate, and address any disputes about their sufficiency with First Quality and, if necessary, the Court, before taking depositions. Irving also intends to supplement its interrogatory responses to update its positions and to reflect its recent substantial document production. Now that the Court has construed the claims, Irving also would expect First Quality to narrow its assertion of all claims of the three related asserted patents—40 claims—so that the parties can update their positions in a focused manner.

Privilege Logs.  Although First Quality's counsel has served privilege logs for subpoenaed third-party equipment and software suppliers, First Quality has not produced a privilege log for its own internal documents. Irving intends to challenge the privilege logs it has received and would

prefer to raise this privilege challenge to the Court once, in a comprehensive manner, after receiving First Quality's privilege log to avoid presenting disputes to the Court in a piecemeal fashion.  Prior to Irving's recent substantial production, Irving had not identified responsive privileged documents, and Irving now intends to log those documents withheld from its recent production as privileged.  The schedule should provide the parties with sufficient time to present their privilege disputes to the Court and for the Court to resolve them, so that the parties can receive any documents that the Court orders to be produced in advance of depositions.  Contrary to First Quality's contention, Irving is not seeking to revisit this Court's earlier ruling about work-product testing of products for this case; First Quality has claimed privilege over materials exchanged with third parties *years* before this case was filed.

Depositions.  No depositions have occurred.  The parties have noticed a total of eighteen depositions of each other and at least six third-party depositions.  First Quality's proposed four-week extension would require an unduly compressed deposition schedule, even if there were not major discovery issues to be resolved in advance of depositions as detailed above.  As the Court is well aware, these depositions (including those of Irving's witnesses in Canada) will need to proceed remotely due to the COVID-19 pandemic, and the process of Irving's new lead counsel meeting Irving's witnesses and preparing them for deposition will take longer due to the pandemic.  Rather than having to come back to this Court to request further extensions and permission to schedule depositions after the fact discovery deadline, Irving proposes a twelve-week extension that will give the parties the time they actually need to complete fact discovery.

## II. IRVING SHOULD NOT BE PREJUDICED BY DENYING ITS NEW LEAD COUNSEL REASONABLE TIME TO GET UP TO SPEED BEFORE DEPOSITIONS

Irving's new lead counsel at Latham was engaged last week and is working diligently to get up to speed and complete fact discovery.  This case is still at a relatively early stage, and there is sufficient room in the schedule to provide Irving's new lead counsel with a reasonable time to get up to speed before depositions proceed without affecting the scheduled trial.  First Quality's four-week extension would prejudice Irving by denying its new lead counsel sufficient time to learn the case and be prepared for depositions.  Irving respectfully submits that this would be particularly inappropriate because First Quality has done little to meet its own discovery obligations.  First Quality's excuse that Irving did not move to compel First Quality to do so long ago indicates that Irving's new lead counsel likely will need to seek the Court's assistance soon.

*       *       *

For the foregoing reasons, Irving respectfully requests that the Court enter its proposed amended scheduling order extending fact discovery by twelve weeks with corresponding extensions of the deadlines through briefing of dispositive motions.

**First Quality's Position**

Distilling down Irving's 3-page argument, it reads: (a) Irving chose to ignore its discovery obligations for months and failed to engage with First Quality regarding the purported disputes it now raises or the scheduling of depositions noticed over a month ago (b) Irving chose to have new counsel enter an appearance one week before the close of fact discovery and (c) Irving's new counsel at Latham was apparently "surprised" that a sophisticated company like Irving and its sophisticated counsel at its other three law firms of Ashby & Geddes, Michael Best & Friedrich, and Bereksin & Parr (who all represented Irving at the parties' mediation less than 2.5 weeks ago) would allow discovery to descend into this supposedly dire state. But Latham's apparent astonishment at the state of discovery is not a proper basis for granting Irving essentially a fact discovery do-over. The short response, also, is that the situation is not so grim. While substantial more discovery *could* be done in the three more months Irving requests – and no doubt Irving's six newest Latham attorneys alone could spend countless hours on that task – the amount of discovery that *needs* to get done in this case can be completed in one additional month. Irving's position from the outset has been that discovery must be proportional to the needs of the case and indeed it has gone to great lengths to conscribe the scope of discovery. Having strategically sought and obtained significant concessions from First Quality on the scope of discovery through its former lead counsel, Irving would now mire the case with months of unnecessary, vexatious, and untimely "follow-up" discovery.

Irving's reliance on new counsel and the purported desire to not prejudice Latham's ability to get up to speed is nothing more than sleight of hand. Latham is the *fourth* law firm now representing Irving in this case. Counsel from Ashby & Geddes has been a party to every correspondence and meet and confer in this case since the outset. Irving is also represented by "Irving's long-time outside counsel" and "chief outside intellectual property counsel" at the Canadian law firm of Bereksin & Parr. (D.I. 29.) Recall that Irving attempted to side step the law governing foreign counsel's access to highly confidential party discovery by having Bereksin attorneys entered under the PO. In support of Irving's position – which the Court rejected – Irving argued that its Canadian counsel serves as Irving's "primary contact for U.S. counsel." Thus the replacement of one lead U.S. counsel for another is not nearly as impactful as Irving contends. Although not admitted in this case, counsel for Bereskin has been involved at every step since Irving was sent a demand letter in 2018. Bereksin attorneys attended the *Markman* hearing on June 24 and mediation on July 31. Bereskin attorneys also appear to have been involved with Irving's ESI efforts. If three more months of additional discovery was truly necessary, one of Irving's two *other* law firms could and would have sounded the alarm sooner.

No such alarm was raised when the Court asked the parties about the status of discovery at the end of the June 24 *Markman*. Irving did not raise the issue with Judge Thynge at the conclusion of the July 31 mediation. Irving's counsel did not request a discovery dispute teleconference over these many months to address any of its late-manufactured concerns. In fact Irving and its pre-Latham law firms simply ignored First Quality's attempts to meet and confer regarding written discovery, ESI, or a deposition schedule at all. Contrary to Latham's revision of the facts:

- First Quality served its responses and objections to Irving's Interrogatory Nos. 5-18 on **June 11**, over two months ago, and expressly sought to meet and confer regarding the scope and number of Irving's overbroad topics and to discuss Irving's own failure to substantively respond to over twenty ROGs or provide even one verified ROG response. Irving did not respond to First Quality's request for a meet and confer, or mention those

{01598646;v1 }                                             4

ROG responses until last week.  Rather it took the position that it did not intend to respond to First Quality's ROGs until the end of fact discovery, not before depositions.

- First Quality provided its ESI terms to Irving on **June 15** and repeatedly (on at least July 1, 7, and 13) requested Irving to run those terms on its production and to confer regarding a mutual exchange of ESI and privilege logs.  The parties agreed that they had exhausted their non-ESI efforts and that document production in this case would be completed via ESI.  The parties conferred on August 7, with Irving reporting that it was still in the process of investigating ESI, and could not commit to a date certain for its production.  It was agreed however, on Irving's suggestion, that the parties would work on narrowing the scope of ESI on both sides once Irving was far along enough in its ESI investigation.  One week later, without warning and without any indication of whether it intends to honor its commitment to narrow ESI, it sprang 60,000 ESI documents on First Quality.  Irving now wrongly attempts to cast First Quality as a bad actor for delay in its ESI production when First Quality has been waiting to discuss narrowing ESI at Irving's suggestion.

- On **July 17**, over a month ago, First Quality served deposition notices on Irving.  First Quality repeatedly asked Irving for its witnesses' availability and Irving refused to provide even a single deposition date. First Quality even indicated that it would be willing to proceed with depositions without first having all of Irving's documents given the limited issues in this case, but Irving still would not provide its witnesses' availability.

- Irving itself served deposition notices nearly a month ago on **July 23**.  Unlike Irving, First Quality actually provided those witnesses' availability and even confirmed that numerous First Quality witnesses were available to be deposed on the very date and time *noticed by Irving*.  Up until just days before those depositions, Irving refused to confirm whether or not it would take those depositions as noticed or not, causing First Quality to suffer significant and now unnecessary cost and disruption to its business.

- Moreover, as to the discovery and privilege logs provided by subpoenaed third party consultants – which Irving now contends offhand "Irving intends to challenge" at some time in the future – that issue has been ripe for quite some time.  Responses and objections to Irving's subpoenas were served on **May 28**.  Subsequently the parties discussed that much of the work performed by these consultants was expressly at the direction of counsel and thus privileged, and in any event not proportional to the needs of this case.  The consulting agreements giving rise to the privileged relationship were produced to Irving on **July 8**, and detailed privilege logs were provided on **July 21** and **July 22**.  These third parties have already expended a tremendous amount of time and energy responding to these subpoenas and Irving has done nothing to timely present this manufactured privilege dispute to the Court as required by Fed. R. Civ. P. 45, instead stringing these third parties along for months.  The discovery it seeks from them (like all of the other privileged testing Irving belatedly seeks) is also a fishing expedition to the extreme as it seemingly relates only to Irving's long-withdrawn inequitable conduct claim and Irving has in these past months presented no other possible relevance for this privileged testing information.

The state of discovery is a product of Irving's making.  While Irving now asks for "sufficient time" to address all of these issues with the Court, it *had* sufficient time to conduct – or compel – the discovery it believed was proportional to the needs of the case.  Irving strategically chose not to and its new counsel should not be permitted to raise these so-called disputes at its leisure.

Instead, Irving should be held to the very same standard for conducting discovery that it urged the Court adopt in March. (*See* D.I. 50, 56.)  In resisting First Quality's requests that Irving supplement its 100 document production, and noting one set of subpoenas First Quality served on Irving's equipment supplier for manufacturing the accused products, Irving argued that "First Quality's approach to discovery leads to the unavoidable conclusion that its tactical goal is to force Irving to spend an inordinate amount of resources responding to First Quality's discovery.  This conclusion is based upon . . . First Quality's scorch-the-earth unwillingness to agree to reasonable limitations to the scope of its discovery requests."  (D.I. 50.)  Irving not long ago stressed that the proportionality standard must govern and that in view of the limited issues in this case First Quality was then engaged in "an unreasonably expensive fishing expedition exemplifies why the standard for discovery was changed." (D.I. 56.)  Just because Irving is apparently displeased with the success of its previous lead counsel's approach, it should not be allowed to simply reverse course with new counsel at the helm of its discovery efforts.

Indeed Irving's new counsel apparently intends to use its requested three-month extension to re-litigate long resolved issues.  In a letter from Latham yesterday, counsel argued that materials relating to testing "cannot conceivably be privileged."  But Irving *already* moved for these *same* materials in April, and the Court found that "[t]o the extent that the plaintiffs have done testing with what I assume are consulting experts, in terms of moving forward with the case, that is work product, and I'm not going to require that it be disclosed." (*See* Apr. 7, 2020 Hr'g Tr. at 9:10-23).  Permitting Latham to ignore this case history and to re-raise such challenges simply because it apparently does not yet have the benefit of the complete case file is highly prejudicial to First Quality.  And re-litigation of such issues needlessly burdens the parties and the Court.

Clearly Irving seeks to distance itself from every action and inaction of its former lead counsel, noting that Michael Best will withdraw immediately upon turning over the case file.  It goes so far as to congratulate Latham for swiftly coordinating the production of Irving's ESI just one day after entering its appearance – a task that its former counsel refused to do for months and just last week represented to First Quality could not be done for many more weeks.  But this Janus-faced praise only confirms that it is *Irving*, and not First Quality, who has acted improperly to date.  Moving forward, Irving's six new Latham attorneys, with the assistance of counsel from Ashby & Geddes and Bereksin, is more than capable of getting up to speed and conducting the limited depositions remaining.  Contrary to Irving's suggestion, conducting the depositions in this case remotely will only *reduce* the time and burden associated with their preparation and completion.

First Quality agrees that, because of Irving's delays, some extension is warranted to complete discovery.  But, Irving's proposed schedule seeks to borrow from First Quality to pay Irving.  While Irving's proposal indeed may be doable in the abstract, by "shortening" and "tightening" the remainder of the schedule, it now provides for no slack in the case.  Irving's lengthy three month extension – which it admits it intends to use to propound even more discovery – sucks all the air out of the room and solely for Irving's and its newest counsel's benefit.  First Quality and *its* counsel would be forced to work around a very different schedule than previously negotiated and planned for.  And if any unforeseen circumstances occur between now and trial, First Quality will be required to make the unfair decision of requesting an extension (or permitting Irving one) or losing its trial date.  Under First Quality's compromise proposal, the parties can focus the next month on the *necessary* discovery that is proportional to the needs of this case (and not use the extension as a discovery reset button and to re-litigate old matters) while also not prejudicing First Quality's ability to meaningfully prepare the *remaining* aspects of this case.

Dated: August 18, 2020

| FISH & RICHARDSON P.C. | ASHBY & GEDDES |
|---|---|
| */s/ Warren Keith Mabey, Jr.* | */s/ John G. Day* |
| Warren Keith Mabey, Jr. (#5775) | John G. Day (#2403) |
| Nitika Gupta Fiorella (#5898) | Andrew C. Mayo (#5207) |
| 222 Delaware Avenue, 17th Floor, | 500 Delaware Avenue, 8th Floor |
| P.O. Box 1114 | P.O. Box 1150 |
| Wilmington, DE 19801 | Wilmington, DE 19899 |
| (302) 652-5070 | (302) 654-1888 |
| mabey@fr.com | jday@ashbygeddes.com |
| fiorella@fr.com | amayo@ashbygeddes.com |
| | |
| Edmond R. Bannon | Maximilian A. Grant |
| Jeffrey C. Mok | Matthew J. Moore |
| 7 Times Square | Inge A. Osman |
| 20th Floor | LATHAM & WATKINS LLP |
| New York, NY 10036 | 555 Eleventh Street, NW, Suite 1000 |
| (212) 765-5070 | Washington, D.C. 20004-1304 |
| bannon@fr.com | (202) 637-2200 |
| jmok@fr.com | |
| | Charles H. Sanders |
| *Attorneys for Plaintiff* | David W. Rowe |
| *First Quality Tissue, LLC* | Paul Weinand |
| | LATHAM & WATKINS LLP |
| | 200 Clarendon Street |
| | Boston, MA 02116 |
| | (617) 948-6000 |
| | |
| | *Attorneys for Defendants Irving Consumer Products Limited and Irving Consumer Products, Inc.* |