IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FIRST QUALITY TISSUE, LLC,<br><br>              Plaintiff,<br><br>              v.<br><br>IRVING CONSUMER PRODUCTS LIMITED and IRVING CONSUMER PRODUCTS, INC.,<br><br>              Defendants. | )<br>)<br>)<br>)<br>)<br>)  C.A. No. 19-428-RGA<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND SPECIAL MASTER ORDER #8

First Quality moved (1) for a protective order to prevent the deposition of third party Kimberly-Clark and (2) to strike Irving's third and fourth supplemental invalidity contentions. D.I. 147. Each side submitted a three-page letter brief on these two disputes. *See* D.I. 146. On October 21, 2020, the Special Master held a transcribed hearing. At the hearing, the Special Master denied First Quality's motion for a protective order, allowing the deposition of Kimberly-Clark to proceed. *See* October 21, 2020 Hearing Transcript at 21-24.

For the reasons explained below, the Special Master denies First Quality's motion to strike Irving's third and fourth supplemental invalidity contentions.

### BACKGROUND

On February 24, 2020, Irving served initial invalidity contentions that identified four prior art references and alleged anticipation under 35 U.S.C. § 102(b). On August 28, 2020, Irving served supplemental invalidity contentions identifying additional prior art it had located and tested. In addition to anticipation, Irving added obviousness contentions and detail to its § 112 and unenforceability positions. On September 3, 2020, Irving again supplemented its invalidity contentions to disclose measurements taken on prior art tissue samples.

First Quality moved to strike Irving's August 28th and September 3rd supplemental invalidity contentions.  D.I. 126.  The Special Master denied First Quality's motion to strike.  D.I. 138 at 14-18.  In denying the motion, the Special Master noted that "[c]ourts in the Third Circuit favor resolution of disputes on their merits, particularly with respect to patent validity issues, which raise public interest concerns extending beyond the immediate dispute between the parties."  *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 93 (D. Del. 2016).  In analyzing the *Pennypack* factors, the Special Master also noted that the timing of Irving's supplementation—made before depositions, before the close of fact discovery, and almost a year before trial—favored allowing Irving's supplemental contentions.  D.I. 138 at 17.

On October 2, 2020, the same day that the Special Master denied First Quality's motion to strike Irving's August 28th and September 3rd supplemental invalidity contentions, Irving received samples of prior art Scott Extra Soft tissue from third party Kimberly-Clark.  Irving's October 21, 2020 Letter Brief at 3.  Irving represents that it quickly tested these new samples, found that they met the claimed surface roughness requirements, and served a third set of supplemental invalidity contentions on October 13, 2020.  *Id*.  In addition, Irving "amended its enablement, written description and unclean hands positions based on First Quality's witnesses' testimony, and First Quality's subsequent representation at the October 8, 2020 [Special Master] hearing that the 2012/2013 version of the Omnisurf software 'must' be used."  *Id*.  Irving's supplement "also addressed the possibility that First Quality would contend the 2012/13 version of the Mahr profilometer must be used."  *Id*. at footnote 4.  The next day, October 14, 2020, Irving served fourth supplemental invalidity contentions.  Irving says it supplemented for a fourth time "out of an abundance of caution" to add more detail to its indefiniteness contentions.  *Id*.

First Quality moves to strike Irving's third and fourth supplemental invalidity contentions as untimely and prejudicial. First Quality's October 20, 2020 Letter Brief at 2-3. Although the case schedule does not have a deadline for "final" invalidity contentions, First Quality argues that Irving's supplementations are late because fact discovery closed on September 21, 2020 and opening expert reports are due on October 28, 2020. First Quality also argues that Irving's actions are contrary to the Delaware Default Standard, which, according to Irving, "creates an efficient process where accused products are identified, core technical documents are produced early, and detailed infringement contentions, and then invalidity contentions are shared. Additional discovery is taken in the context of that process." D.I. 60 at 2.

As to prejudice, First Quality argues that it had no opportunity to take any discovery on Irving's new contentions because fact discovery was closed. Although Irving's new contentions relate to invalidity, First Quality argues that the new matter "may also be relevant to First Quality's expert's analysis of infringement issues." First Quality's October 20, 2020 Letter Brief at 3.

## DISCUSSION

Fed. R. Civ. P. 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Contentions made under the Delaware Default Standard for Discovery, which includes invalidity contentions, are considered to be "initial disclosures" under Rule 26(a). *See Intellectual Ventures I LLC v. AT&T Mobility* LLC, 2017 WL 658469, at *1 (D. Del. Feb. 17, 2017).

The case schedule did not set a deadline for final invalidity contentions. Irving admits that the close of fact discovery is "at least a marker." October 21, 2020 Hearing Transcript at 40:15-16. The close of fact discovery is more than a "marker." Invalidity contentions should be complete and final long before the close of fact discovery. As Irving stated earlier in this case, the idea behind contentions, and invalidity contentions in particular, is that they should be made early in the case, and they should guide the scope of subsequent discovery. By serving its third and fourth supplemental invalidity contentions a month after the close of fact discovery, Irving prevented the contentions from serving their designed purpose. Rather than serving as a guide to subsequent discovery, Irving's recent supplementations are merely a forecast of Irving's upcoming expert reports.

Because Irving's third and fourth supplemental invalidity contentions were late, the question becomes whether Irving's failure was substantially justified or harmless. To determine whether a failure to disclose is harmless, courts in the Third Circuit consider the "*Pennypack*" factors, which include: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the possibility of curing the prejudice; (3) the potential disruption of an orderly and efficient trial; (4) the presence of bad faith or willfulness in failing to disclose the evidence; and (5) the importance of the information withheld. *See Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 719 (3d Cir. 1997) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904-05 (3d Cir. 1977)). The determination of whether to exclude evidence is within the discretion of the court. *See In re Paoli*, 35 F.3d 717, 749 (3d Cir. 1994). In "sophisticated, complex litigation involving parties represented by competent counsel," courts have "been less indulgent" in applying the *Pennypack* factors and "more willing to exclude evidence without a

strict showing that each of the *Pennypack* factors has been satisfied." *Bridgestone Sports Co. v. Acushnet Co.*, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007).

Irving's supplementation regarding the Scott Extra Soft tissue received from Kimberly-Clark on October 2, 2020 was substantially justified. Despite serving its subpoena on Kimberly-Clark three weeks before the close of fact discovery, Kimberly-Clark did not produce tissue samples until just after the close of fact discovery. As noted in the context of whether to allow the Kimberly-Clark deposition to proceed, "Irving cannot control Kimberly-Clark, especially during a pandemic." October 21, 2020 Hearing Transcript at 22:8-13. Once Irving received samples from Kimberly-Clark, Irving tested the samples and updated its contentions within two weeks. The Irving's supplementation regarding the Scott Extra Soft tissue was substantially justified for these reasons.

Even if Irving's Scott Extra Soft tissue supplementation had not been substantially justified, it was harmless. First Quality was on notice that Irving was seeking tissue samples from Kimberly-Clark through the subpoena served during fact discovery. Thus, there was no surprise. First Quality had the opportunity to cure any prejudice by seeking discovery regarding Scott Extra Soft tissue during the fact discovery period or through cross-examination at the Kimberly-Clark deposition held last week. Trial is still almost a year away, and there is no evidence of bad faith or willfulness on Irving's part. The Scott Extra Soft tissue appears to be important prior art, weighing against striking it. Excluding this critical evidence would be an "extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Abbott Labs. v. Lupin Ltd.*, 2011 WL 1897322, at *3 (D. Del. May 19, 2011) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d

717, 791-92 (3d Cir. 1994)).  No willful deception or flagrant disregard of a court order is at play here.  For all these reasons, Irving's Scott Extra Soft tissue supplementation was harmless.

Irving's remaining additions to its invalidity contentions concerned "enablement, written description and unclean hands positions based on First Quality's witnesses' testimony, and First Quality's subsequent representation at the October 8, 2020 [Special Master] hearing that the 2012/2013 version of the Omnisurf software 'must' be used."  Irving's October 21, 2020 Letter Brief at 3.  The depositions of Mahr (the manufacturer of the profilometer), Digital Metrology (the maker of the Omnisurf software), and Amster (the law firm who prosecuted the asserted patents) will be taken in the future by agreement of the parties.  October 21, 2020 Hearing Transcript at 45:14-46:18.  Because these depositions may shed additional light on the enablement and written description contentions at issue here, First Quality's motion to strike these portions of the third and fourth supplemental invalidity contentions is **DENIED WITHOUT PREJUDICE** to renew after the conclusion of these depositions.

## CONCLUSION

For the reasons stated above, First Quality's motion to strike the portions of Irving's third and fourth supplemental invalidity contentions regarding the Scott Extra Soft tissue received from Kimberly-Clark on October 2, 2020 is **DENIED**, and First Quality's motion to strike Irving's supplementation regarding enablement, written description, and unclean hands is **DENIED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

Dated: October 27, 2020

_____
Special Master Chad S.C. Stover