## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FIRST QUALITY TISSUE, LLC,          )
                                    )
            Plaintiff,              )
                                    )
      v.                            )     C.A. No. 19-428-RGA
                                    )
IRVING CONSUMER PRODUCTS            )     **PUBLIC VERSION**
LIMITED and IRVING CONSUMER         )
PRODUCTS, INC.,                     )
                                    )
            Defendants.             )

## MEMORANDUM OPINION AND SPECIAL MASTER ORDER #7

On October 2, 2020, the Special Master issued Memorandum Opinion and Order #3, which ordered Plaintiff First Quality Tissue, LLC (First Quality) to "submit all category (2) documents for *in camera* review" and "provide to the Special Master new versions of the three privilege logs with the rows for the documents being submitted highlighted in yellow and a column with a Bates or other control number for each document being submitted for review so the Special Master can determine which document corresponds with which log entry." D.I. 138 at 9. First Quality made the requested submissions on October 12, 2020. Having reviewed the documents submitted for *in camera* inspection, the Special Master rules as follows.

### BACKGROUND

Familiarity with Memorandum Opinion and Order #3 is assumed.

First Quality asserts three related patents, U.S. Patent Nos. 9,506,203, 9,580,827, and 9.725,853. All three are entitled "Soft Through Air Dried Tissue." The asserted claims require that the outer surface of the through air dried (TAD) tissue has specific surface properties. These properties include "Average Peak to Valley Waviness," "Waviness Uniformity," "Average Primary Amplitude," and "Amplitude Uniformity."

The specifications of the patents, which appear to be the same, state that "the tissue of the present invention is measured to have Pa and Wc values that are both low and relatively uniform compared to conventional TAD tissue products." *See, e.g.,* '203 patent at 9:24-26.  The patents disclose measured values of Pa and Wc for several prior art tissues and two embodiments of the invention.  *Id*. at column 9.  These measurements were taken using Mahr, Inc.'s profilometer and analyzed using Digital Metrology Solutions, Inc.'s Omnisurf software.  *Id*. at column 9.

Irving requested First Quality's Pa and Wc measurements and protocols for obtaining those measurements.  Ex. D to Irving's Opening Brief at 80-81 and 87-88.  Irving also requested the same measurement documents from Mahr and Digital Metrology.  Exs. E and F to Irving's Opening Brief.  The parties do not dispute that the requested documents are relevant.

First Quality produced some documents regarding the measurements disclosed in the patents.  But First Quality, Mahr, and Digital Metrology withheld the majority of documents concerning Pa and Wc measurements based on claims of attorney-client privilege and attorney work product, and each served a privilege log.  Exs. K, L, and M to Irving's Opening Brief.

Irving moved to compel production of measurements of the properties claimed or described in the asserted patents, protocols for obtaining those measurements, and samples of prior art products from First Quality and its third-party vendors Mahr Inc. and Digital Metrology. First Quality voluntarily submitted 23 documents for *in camera* inspection.

In Memorandum Opinion and Order #3, the Special Master analyzed First Quality's attorney-client privilege and attorney work product claims relating to three categories of documents:

(1) Testing and analysis conducted by Dr. Malburg of Digital Metrology and Mahr at the direction of First Quality's attorneys at Amster Rothstein & Ebenstein LLP (Amster) to understand the methodologies described in third-party patents, and interpretation of data for Amster to use in its legal analysis and advice.

(2) Projects with Amster related to obtaining patent protection on soft bath tissue products in 2013 and on towel products in 2015.

(3) Testing that raised concerns about infringement by First Quality's competitors with respect to recently filed patent applications.

As to the first and third categories, the Special Master denied Irving's motion to compel. As to category (2), however, the Special Master found that at least certain documents or portions of documents may have been improperly withheld and ordered First Quality to submit all category (2) documents to the Special Master for *in camera* inspection.

On October 12, 2020, First Quality submitted the category (2) documents along with the following additional documents:

Digital Metrology's First Amended Privilege Log;

First Quality Tissue's Partial Privilege Log;

First Quality's Supplemental Privilege Log (produced to Irving on October 12, 2020);[1]

Amster Privilege Log; and

Declaration of James E. Sealey in support of First Quality Tissue's privilege assertions on documents submitted *in camera*, with Appendix A (Tables 1-4).

The documents submitted for *in camera* inspection can be subcategorized as follows:

(1) Documents withheld by Amster and logged in the Amster Privilege Log;

---

[1] First Quality's Supplemental Privilege Log entries for some of the category (2) documents contain claims for "Attorney Work Product" protection in addition to the attorney-client privilege. For example, the log entry for the first document on First Quality's Supplemental Privilege Log, FIR_QUA_ECA0000018743, which was one of the initial 23 documents First Quality submitted for *in camera* inspection, contains such a claim. First Quality's September 11, 2020 Answering Brief, however, only claimed attorney-client privilege for the category (2) documents. *See* First Quality's September 11, 2020 Answering Brief at 11. First Quality has not made any attorney work product argument as to the documents submitted for *in camera* inspection. Thus, First Quality has not met its burden to establish attorney work product protection over any of the category (2) documents. Accordingly, the analysis below is limited to whether First Quality properly withheld the category (2) documents as attorney-client privileged.

(2) Table 1 documents withheld by First Quality and logged in First Quality's Partial Privilege Log and Digital Metrology's Privilege Log;

(3) Table 2 documents withheld by First Quality and logged in First Quality's Partial Privilege Log and First Quality's Supplemental Privilege Log;

(4) Table 3 documents withheld by First Quality and logged in First Quality's Partial Privilege Log, First Quality's Supplemental Privilege Log, and Digital Metrology's Privilege Log; and

(5) Table 4 documents withheld by First Quality and logged in First Quality's Partial Privilege Log, First Quality's Supplemental Privilege Log, and Digital Metrology's Privilege Log.

According to the Declaration of James Sealey submitted with the documents for *in camera* inspection, Tables 1-3 contain documents relating to obtaining patent protection on soft bath tissue products in 2013, and Table 4 documents relate to obtaining patent protection on towel products in 2015.

## LEGAL STANDARDS

The attorney-client privilege gives the client the "right to refuse to disclose confidential communications between attorney and client made for the purpose of obtaining legal advice." *Hoffmann–La Roche, Inc. v. Roxane Labs., Inc.*, No. 09–6335 (WJM), 2011 WL 1792791, at *4 (D.N.J. May 11, 2011) (internal citation omitted).  The privilege "encourage[s] full and frank" information exchanges within the attorney-client relationship to promote the observation of law and the administration of justice.  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991).  While the privilege protects communications between privileged persons, it does not protect the facts

underlying those communications. *Brigham and Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463, 469 (D. Del. 2010) (citing *Upjohn*, 449 U.S. at 395).

The United States Court of Appeals for the Third Circuit has held that the attorney-client privilege applies to "(1) a communication (2) made between privileged persons (3) in confidence (4) for the purpose of obtaining or providing legal assistance for the client." *In re Chevron Corp.*, 650 F.3d 276, 289 (3d Cir. 2011). "'Privileged persons' include the client, the attorney(s), and any of their agents that help facilitate attorney-client communications or the legal representation." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (citation omitted).

## DISCUSSION

In Order #3, the Special Master stated as follows:

> Category (2), according to First Quality, includes "analysis and interpretation of various data" pursuant to Dr. Malburg's consulting agreement that "was sent to and used by Amster for purposes of providing legal advice regarding patent prosecution." First Quality's Answering Brief at 4. Presumably, "various data" includes Pa and Wc measurements of prior art tissue samples. First Quality claims that category (2) documents are attorney-client privileged but makes no claim for attorney work product protection. *See* First Quality's Answering Brief at 11-12.
>
> Irving argues that the Pa and Wc measurements, protocols for obtaining them, and samples that were measured are not protected by the attorney-client privilege because they are facts. Irving is correct that "[w]hile communications between the attorney and the client are protected by the privilege, the facts underlying those communications are not." *Brigham & Women's Hosp.*, 707 F. Supp. 2d at 469. Parsing communication from fact, however, often creates "some difficult line-drawing problems." *Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 145 (D. Del. 1977). The *Hercules* decision pointed out that "[t]he fact that a communication contains technical information, however, does not automatically preclude application of the privilege. If the primary purpose of the document is to solicit legal advice based on that information, the privilege applies." *Id*. at 148.
>
> Because drawing lines can be problematic when determining privilege in patent matters, courts often examine challenged documents *in camera* before making a decision. *See, e.g., id*.; *Shire Dev. Inc. v. Cadila Healthcare Ltd.*, No. CA 10-581-KAJ, 2012 WL 5247315, at *4 (D. Del. June 15, 2012). In *Shire*, Special Master Joshua W. Martin III reviewed each challenged document *in*

*camera*, found that certain documents and certain portions of documents contained "purely technical or factual information," and ordered those documents and portions of documents to be produced. *Shire*, 2012 WL 5247315, at *4-8.

Here, First Quality cites to no decision holding that purely technical or factual information is protected by the attorney-client privilege. The closest First Quality comes is *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000). *In re Spalding* held that a specific invention record containing technical information was attorney-client privileged where the "overall tenor of the document indicates that it is a request for legal advice or services." *Id*. But "*Spalding* does not insulate otherwise discoverable information simply because it is included in a privileged communication." *Vasudevan Software, Inc. v. International Business Machines Corp.*, 2011 WL 1599646, *2–*3 (N.D. Cal. 2011).

To the extent that Pa and Wc measurements and protocols for obtaining them are purely technical or factual, they are not protected by the attorney-client privilege.

D.I. 138 at 7-9.

On further reflection, the holding of *In re Spalding* and district court decisions applying it merit further consideration.[2] "The *In re Spalding* Court held that invention records that were submitted by the inventors to the corporation's legal department, for the purpose of obtaining legal advice or assistance in a legal proceeding, were protected by the attorney-client privilege, despite their inclusion of technical information, 'because requests for legal advice on patentability or for legal services in preparing a patent application necessarily require the evaluation of technical information[.]'" *INVISTA N. Am. S.à.r.l. v. M&G USA Corp.*, No. CV 11-1007-SLR-CJB, 2013 WL 12171721, at *13 (D. Del. June 25, 2013) (citing *In re Spalding*, 203 F.3d at 805-06). Thus, "an invention record constitutes a privileged communication, as long

---

[2] The parties did not address whether Federal Circuit law or Third Circuit law applies to the attorney-client privilege issues before the Special Master. "In patent cases, regional circuit law governs disputes relating to the applicability of the attorney-client privilege and related privileges/doctrines, to the extent that those issues are not unique to patent law." *INVISTA N. Am. S.à.r.l.,* 2013 WL 12171721, at *4 (citations omitted). "However, when a determination of the applicability of such a privilege implicates a substantive patent law issue, the law of the United States Court of Appeals for the Federal Circuit applies." *Id*. With regard to whether attorney-client privilege applies to an invention record, Federal Circuit law applies. *In re Spalding*, 203 F.3d at 804-04.

as it is provided to an attorney for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding." *Endo Pharm. Inc. v. Mylan Pharm. Inc.*, No. CV 11-717 (JEI/KMW), 2013 WL 12152480, at *1 (D. Del. May 14, 2013) (citing *In re Spalding*). *See also Karl Storz Endoscopy–Am., Inc. v. Stryker Corp.*, No. C09–355 VRW, 2010 WL 727220, at *2 (N.D. Cal. Mar. 1, 2010) (noting that *In re Spalding* "dispelled the view then held by many courts that purely technical information communicated to an attorney was not privileged").

While an invention record was at issue in *In re Spalding*, some district courts have applied the holding of *In re Spalding* to technical communications other than invention records. *See, e.g., SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 480 (E.D. Pa. 2005) (finding communications from counsel providing legal advice and including certain technical information were privileged).

All of these decisions, however, are uniform in holding that "the central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." *In re Spalding,* 203 F.3d at 805. *See also Games2U, Inc. v. Game Truck Licensing, LLC*, No. MC-13-00053-PHX-GMS, 2013 WL 4046655, at *4 (D. Ariz. Aug. 9, 2013) (listing and discussing relevant decisions).

With the above-cited principles in mind, the Special Master makes the following rulings on the documents submitted for *in camera* inspection.

## I.   DOCUMENTS WITHHELD BY AMSTER

All twelve of the documents withheld by Amster and submitted for *in camera* inspection are protected by the attorney-client privilege.   These documents included communications among the Amster law firm and First Quality employees in furtherance of patent prosecution.

They are "confidential communications between attorney and client made for the purpose of obtaining legal advice." *Hoffmann–La Roche, Inc.,* 2011 WL 1792791, at *4. *See also Fed. Trade Comm'n v. Abbvie, Inc.*, No. CV 14-5151, 2015 WL 8623076, at *12 (E.D. Pa. Dec. 14, 2015) (finding email attachment memorializing and forwarding legal advice from counsel regarding a patent application and patent prosecution was privileged).

## II.    TABLE 1 DOCUMENTS WITHHELD BY FIRST QUALITY

Of the 17 Table 1 documents, 16 are Microsoft® Excel data files and one is a graphical representation of data.  None of the Table 1 documents are attached to emails or other communications; they are stand-alone files.  Dr. Malburg of Digital Metrology is listed as an author on all of the files.  First Quality claims that all 17 files are protected by the attorney-client privilege.  No claim of attorney work product protection has been made as to these documents.

The October 12, 2020 Declaration of James E. Sealey, First Quality's director of product development, claims as follows:

> around January 2013, First Quality communicated with Dr. Malburg for clarifications on the earlier freedom to operate work, and also, at the direction of Amster, to consult on analysis and interpretation for Amster to advise on prosecution of First Quality's patent applications on soft bath tissue.  In connection with this work, around February and March 2013, at the direction of Amster attorneys, First Quality worked with Dr. Malburg to perform analysis and interpretation, and this analysis and interpretation was sent to and used by Amster attorneys for purposes of First Quality's obtaining of legal advice.  The documents reflecting and used for this analysis and interpretation, submitted *in camera*, were created at the direction of Amster attorneys solely for legal purposes, and not for any business or other purposes.

Oct. 12, 2020 Sealey Declaration at ¶ 5.

*In camera* inspection of the Table 1 documents and other documents concerning the January to March 2013 time period, however, contradicts Mr. Sealey's claim that Dr. Malburg's "analysis and interpretation was sent to and used by Amster attorneys."  *Id*.  None of the

documents show that Amster received the Table 1 documents.  All but one Table 1 document is listed in Digital Metrology's privilege log[3]—not in First Quality or Amster's logs.  First Quality employees sent small portions of the "analysis and interpretation" to Amster for purposes of patent prosecution.[4]  Those communications, included in other Tables, are attorney-client privileged, as discussed below.

But data files generated by Dr. Malburg at the sole request of First Quality employees (not Amster) and never sent to or reviewed by Amster are not privileged because they are not communications "made by a client to an attorney for the purpose of obtaining legal advice or services."  *In re Spalding,* 203 F.3d at 805.

The facts here are different from *In re Spalding.*  *In re Spalding* involved technical information in an invention record submitted by the inventors to the corporation's legal department.  *In re Spalding,* 203 F.3d at 805.  That is, there was a communication from a client to an attorney concerning patent prosecution.  Here, no such communication exists.  It does not appear that Amster ever received the Table 1 documents.  Or at least First Quality has failed to meet its burden to make this showing.  *Onyx Therapeutics, Inc. v. Cipla Ltd.*, No. CV 16-988-LPS, 2019 WL 668846, at *2 (D. Del. Feb. 15, 2019) ("the party asserting the privilege bears the burden of establishing the requisite elements").

To the extent First Quality argues that Dr. Malburg is a "privileged person" such that communications between First Quality employees and Dr. Malburg could be privileged, the facts show otherwise.  "Privileged persons' include the client, the attorney(s), and any of their agents

---

[3] The other document, FIR_QUA_ECA0002099469, was listed in First Quality's Partial Privilege Log.

[4] Paragraph 7 of Mr. Sealey's declaration states that "[i]n some instances, data was obtained for supporting patent applications related to the Asserted Patents."  These "some instances" appear to reference the small portions of the data sent to Amster, admitting that not all of the data was sent to Amster.

that help facilitate attorney-client communications or the legal representation." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007) (citation omitted).  In February 2012, Amster retained Dr. Malburg "in connection with a patent study and related technical analysis currently in progress."  FQ_0007936 (produced in the litigation).  Per the agreement between Amster and Dr. Malburg, Dr. Malburg would assist Amster and be paid by Amster.  *Id*.  The documents submitted for *in camera* inspection show that the "patent study and related technical analysis currently in progress" in February 2012 ended in the summer of 2012.

The new project that resulted in the Table 1 documents began in January 2013, many months after the study "currently in progress" in February 2012 ended.  First Quality employees, not Amster, contacted Dr. Malburg in January 2013 about this new project, retained Dr. Malburg and worked with Dr. Malburg, all without any Amster involvement.  In fact, when Dr. Malburg expressly referenced the confidentiality obligations in his previous agreement with, First Quality employees sent Dr. Malburg a new, First Quality confidentiality agreement to cover the new project.  When the project concluded, Dr. Malburg submitted his invoice to First Quality, not to Amster.  Further, when First Quality employees sent small portions of Dr. Malburg's data and analysis to Amster on March 1, 2013, Dr. Malburg was not copied on those communications.

These facts show that during the early 2013 time period, Dr. Malburg played no role in helping to "facilitate attorney-client communications or the legal representation" and thus was not a "privileged person."  *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 359.

Because the Table 1 documents are not protected by the attorney-client privilege, Irving's motion to compel the production of the Table 1 documents is **GRANTED**.

## II.   TABLE 2 DOCUMENTS WITHHELD BY FIRST QUALITY

The nine Table 2 documents are either (1) emails between the inventors at First Quality and Amster or (2) emails between the inventors regarding collection of information to send to Amster.  Both types of communications part of the invention record, and both are privileged. *See In re Spalding*, 203 F.3d at 805-06 ("an invention record constitutes a privileged communication"); *Chrimar Sys. Inc. v. Cisco Sys. Inc*., No. 13-CV-01300-JSW(MEJ), 2016 WL 1595785, at *3 (N.D. Cal. Apr. 21, 2016) (finding that emails named inventor wrote and sent to himself that memorialized communications he had with patent prosecution counsel were privileged); *Hoffmann-La Roche, Inc.,* 2011 WL 1792791, at *8 ("Draft patent applications and communications associated with those applications are generally privileged communications, even if technical or other business information is included.").

Some of the Table 2 communications contain small portions of data and analysis of that data.  Irving has urged that these portions are "facts" underlying the communications, and thus not protected by the privilege.  *See Brigham and Women's Hosp. Inc. v. Teva Pharms. USA, Inc.*, 707 F. Supp. 2d 463, 469 (D. Del. 2010) ("While communications between the attorney and the client are protected by the privilege, the facts underlying those communications are not.) (citing *Upjohn*, 449 U.S. at 395).  But *In re Spalding* teaches that it is not "necessary to dissect the document to separately evaluate each of its components" so long as "the overall tenor of the document indicates that it is a request for legal advice or services."  *In re Spalding*, 203 F.3d at 806.  And other courts have found that even purely technical information can be privileged where the other requirements for application of the attorney-client privilege are present.  *See, e.g., SmithKline Beecham Corp.*, 232 F.R.D. at 480   (finding communications from counsel providing legal advice and including certain technical information were privileged); *Karl Storz*

11

*Endoscopy-Am., Inc.,* 2010 WL 727220, at *2 *("Spalding* dispelled the view then held by many courts that purely technical information communicated to an attorney was not privileged").

Here, the data and analysis of that data is an integral part of the attorney-client communications and the overall tenor of the communications was to seek legal advice from the Amster attorneys about the filing of a patent application.   Thus, these communications are attorney-client privileged.  *See Endo Pharm. Inc.*, 2013 WL 12152480, at *1 ("an invention record constitutes a privileged communication, as long as it is provided to an attorney for the purpose of securing primarily legal opinion, or legal services, or assistance in a legal proceeding") (citing *In re Spalding*).

Irving's motion to compel the production of the Table 2 documents is **DENIED**.

## III.   TABLE 3 DOCUMENTS WITHHELD BY FIRST QUALITY

The 99 Table 3 documents fall into four categories:  (1) communications between the First Quality inventors and Amster regarding prosecution of the application that led to the asserted patents; (2) communications between the First Quality inventors and/or other First Quality employees regarding information requested by Amster for use in this patent prosecution; (3) communications between the First Quality inventors and Dr. Malburg regarding the new 2013 project discussed above; and (4) two internal First Quality product development documents attached to an email to the Amster attorneys.

Table 3 documents in categories (1) and (2) are attorney-client privileged, as explained above with respect to the Table 2 documents.

Table 3 documents in category (3)—communications between the First Quality inventors and Dr. Malburg—are not attorney-client privileged for the same reasons that the Table 1 data files discussed above are not privileged.  Just as the files themselves are not privileged, the

communications about them are not privileged where none of the communications copied an attorney and there is no evidence that an attorney ever saw the communications.  First Quality has not met its burden to show that the communications were "made by a client to an attorney for the purpose of obtaining legal advice or services."  *In re Spalding,* 203 F.3d at 805.

Analysis of the two internal First Quality product development documents— FIR_QUA_ECA0001965841.0001.0001 and FIR_QUA_ECA0001965841.0002.0001—is slightly different.  These two documents are internal First Quality documents titled "Trial Report" and detailing 2011 product development trials run by First Quality employees to improve the softness of bath tissue.  Nothing about the documents or the discussion of the documents in the emails suggests they were generated at the request of any attorney or for any legal-related purpose—they are merely product development reports distributed within First Quality.  As such, they are not privileged.  *See In re Spalding,* 203 F.3d at 805.  The fact they were attached to attorney-client privileged communications does not alter the result.  *See Hoffmann-La Roche, Inc.,* 2011 WL 1792791, at *8 ("Documents are not privileged simply because they end up with a lawyer or eventually prove useful to the lawyer's provision of legal services."); *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 187 (D.N.J. 2003) ("stapling one privileged document to a non-privileged document does not cloak the non-privileged material with protection from discovery").

Attached to this opinion is a chart setting forth the Special Master's rulings on each of the 99 Table 3 documents, consistent with the analysis above.

## IV.   TABLE 4 DOCUMENTS WITHHELD BY FIRST QUALITY

The October 12, 2020 Sealey declaration states that the Table 4 documents involve "a new project related to novel paper towel products."  Sealey Declaration at ¶ 8.  Sealey claims

that "[a]t the direction of Amster, First Quality [] contacted Dr. Malburg regarding work on the towel project" and "[t]his work involved, at the direction of Amster attorneys, obtaining, analyzing, and interpreting information solely for purposes of obtaining legal advice and not for any business or other purposes." *Id*.

The 127 Table 4 documents submitted for *in camera* inspection fall into four categories: (1) communications between First Quality inventors and Amster regarding prosecution of a patent relating to paper towel products; (2) communications between the First Quality inventors and/or other First Quality employees regarding information requested by Amster for use in this patent prosecution; (3) communications between and among the First Quality inventors and Dr. Malburg regarding the new paper towel project; and (4) a string of emails from March 2013 between a First Quality employee and representatives of Mahr Federal, Inc. (FIR_QUA_ECA0001985755).

Table 4 documents in categories (1) and (2) are attorney-client privileged, as explained above with respect to analogous Table 2 and 3 documents.

Table 4 documents in category (3)—communications between and among the First Quality inventors and Dr. Malburg regarding the new paper towel project—are not attorney-client privileged because they were not "made by a client to an attorney for the purpose of obtaining legal advice or services." *In re Spalding,* 203 F.3d at 805 (Fed. Cir. 2000).

These communications are analogous to the Table 1 and Table 3—category (3) documents discussed above. In 2015, after the 2012 and early 2013 projects with Dr. Malburg concluded, First Quality employees contacted Dr. Malburg about a new project related to measurements on paper towels. Sealey Declaration at ¶ 8 ("a new project related to novel paper towel products"). First Quality employees reached out directly to Dr. Malburg. No attorneys

from Amster were copied on the communications between First Quality and Dr. Malburg.  Dr.

Malburg sent a quotation to First Quality for this new project.  It appears First Quality accepted

the quotation and paid Dr. Malburg's fee.  Dr. Malburg travelled to First Quality to perform tests

on various paper towels collected by First Quality employees.  There is no evidence that any

attorneys were present for the tests or copied on the communications concerning the testing or

the test results.  Under these facts, First Quality has not met its burden to show that the

communications between First Quality and Dr. Malburg were "made by a client to an attorney

for the purpose of obtaining legal advice or services." *In re Spalding,* 203 F.3d at 805.[5]

The email chain between a First Quality employee and representatives of Mahr Federal,

Inc. (FIR_QUA_ECA0001985755) need not be produced in light of Special Master Order #3,

D.I. 138.  In that opinion and order, the Special Master found that "[t]esting and analysis

conducted by … Mahr at the direction of First Quality's attorneys at Amster Rothstein &

Ebenstein LLP to understand the methodologies described in third-party patents" was attorney

work product.  D.I. 138 at 7.  In this email chain, a First Quality employee requests information

about Mahr's earlier work, which Mahr provides.  And then the First Quality employee forwards

this information to another First Quality employee.  Because the attorney work product

information stayed within the corporation and was not disclosed to an adversary, this later

communication did not waive the protection.  *In re Chevron Corp.*, 633 F.3d at 165 ("it is only in

cases in which the material is disclosed in a manner inconsistent with keeping it from an

---

[5] For the same reasons discussed in relation to the 2013 project that resulted in the Table 1 and Table 3 documents, Dr. Malburg also was not a "privileged person" with respect to this 2015 paper towel project.  The facts here are even stronger because three years elapsed between the expiration of Dr. Malburg's 2012 written agreement with Amster (which was limited to the 2012 project "currently in progress" and required payment from Amster to Dr. Malburg) in the summer of 2012 and this new 2015 project.  Also, this new project concerned paper towels rather than bath tissue, further distancing it from the work Dr. Malburg conducted for Amster.

adversary that the work-product doctrine is waived").  Thus, this email chain remains attorney work product and need not be produced.

Attached to this opinion is a chart setting forth the Special Master's rulings on each of the 127 Table 4 documents, consistent with the analysis above.

## CONCLUSION

As set forth above, the Special Master **GRANTS-IN-PART** and **DENIES-IN-PART** Irving's motion to compel production of the category (2) documents.  First Quality and/or Digital Metrology shall produce the follow documents:

(1) All Table 1 documents;

(2) The Table 3 documents identified for full production or redacted production in the attached chart; and

(3) The Table 4 documents identified for full production or redacted production in the attached chart.

Also, the parties shall confer about their availability for a status teleconference with the Special Master to be held on the afternoon of October 26, 2020 or the morning of October 27, 2020.  The parties shall advise the Special Master of their availability by a joint email.

This memorandum opinion and order is preliminarily submitted under seal as a precaution because various portions of the underlying briefing were marked highly confidential. Within three (3) business days of this order, the parties shall jointly email the Special Master and advise of any proposed redactions.

IT IS SO ORDERED.


Dated: October 23, 2020
**Public Version filed on November 2, 2020**          Special Master Chad S.C. Stover

**Rulings on Table 3 Documents**

| Document # | Determination |
|---|---|
| FQ_REL0000000764 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000765 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000765.0001 | Produce |
| FQ_REL0000000766 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000767 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000767.0001 | Produce |
| FQ_REL0000000769 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000770 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000772 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000773 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000774 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000775 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000775.0001 | Produce |
| FQ_REL0000000776 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000776.0001 | Produce |
| FQ_REL0000000779 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000780 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000781 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000000783 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FQ_REL0000001129 | Produce |
| FIR_QUA_ECA0002049253 | Attorney-Client Privileged |
| FIR_QUA_ECA0000000317 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FIR_QUA_ECA0000000317.0001 | Produce |
| FIR_QUA_ECA0000000317.0002 | Produce |
| FIR_QUA_ECA0001907177 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907177.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907177.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001966657 | Attorney-Client Privileged |

| | |
|---|---|
| FIR_QUA_ECA0001966657.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001966657.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0000126284 | Attorney-Client Privileged |
| FIR_QUA_ECA0000126284.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0000126284.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907175 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907175.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907174 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907173 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907172 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907171 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907170 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907170.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907170.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907170.0003 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907169 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907169.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907169.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907169.0003 | Attorney-Client Privileged |
| FIR_QUA_ECA0000018743 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FIR_QUA_ECA0001907168 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907168.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907167 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907167.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907166 | Attorney-Client Privileged |
| FIR_QUA_ECA0002032345 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907154 | Attorney-Client Privileged |
| FIR_QUA_ECA0001965862 | Attorney-Client Privileged |
| FIR_QUA_ECA0000149544 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907152 | Attorney-Client Privileged |
| FIR_QUA_ECA0001965843 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907150 | Attorney-Client Privileged |
| FIR_QUA_ECA0001965841 | Attorney-Client Privileged |
| FIR_QUA_ECA0001965841.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001965841.0001.0001 | Produce |
| FIR_QUA_ECA0001965841.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001965841.0002.0001 | Produce |
| FIR_QUA_ECA0001907149 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907121 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907121.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907121.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0002026261 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FIR_QUA_ECA0002026261.0001 | Produce |

| | |
|---|---|
| FIR_QUA_ECA0002026259 | Redact the emails from 2012 with Amster. Produce 2013 emails, which do not copy Amster. |
| FIR_QUA_ECA0002026259.0001 | Produce |
| FIR_QUA_ECA0001907058 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907058.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907058.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907058.0003 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907058.0004 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907058.0005 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907058.0006 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907058.0007 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907058.0008 | Attorney-Client Privileged |
| FIR_QUA_ECA0001963480 | Attorney-Client Privileged |
| FIR_QUA_ECA0001963480.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001963480.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001963480.0003 | Attorney-Client Privileged |
| FIR_QUA_ECA0001963480.0004 | Attorney-Client Privileged |
| FIR_QUA_ECA0001963480.0005 | Attorney-Client Privileged |
| FIR_QUA_ECA0001963480.0006 | Attorney-Client Privileged |
| FIR_QUA_ECA0001963480.0007 | Attorney-Client Privileged |
| FIR_QUA_ECA0001963480.0008 | Attorney-Client Privileged |
| FIR_QUA_ECA0001963356 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907045 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907045.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907038 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907038.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907038.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907038.0003 | Attorney-Client Privileged |
| FIR_QUA_ECA0001907038.0004 | Attorney-Client Privileged |

**Rulings on Table 4 Documents**

| Document # | Determination |
|---|---|
| FQ_REL0000000651 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000000651.0001 | Produce |
| FQ_REL0000000747 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000000747.0001 | Produce |
| FQ_REL0000000748 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000000749 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000000751 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000000752 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000000753 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000000755 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000000756 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000000758 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000000759 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FQ_REL0000001130 | Produce |
| FIR_QUA_ECA0001992986 | Attorney-Client Privileged |
| FIR_QUA_ECA0001952375 | Attorney-Client Privileged |
| FIR_QUA_ECA0001952375.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906363 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906363.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906363.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0000180812 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0000180812.0001 | Produce |

| FIR_QUA_ECA0001953178 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
|---|---|
| FIR_QUA_ECA0001953179 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0001953179.0001 | Produce |
| FIR_QUA_ECA0000180688 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0001906454 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0001906454.0001 | Produce |
| FIR_QUA_ECA0001990922 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0001990922.0001 | Produce |
| FIR_QUA_ECA0000180612 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0000180632 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0000180634 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0000180634.0001 | Produce |
| FIR_QUA_ECA0000180586 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0000180591 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0000180592 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0000180593 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0000180601 | Redact the emails from 2012 with Amster. Produce 2013 – 2015 emails, which do not copy Amster. |
| FIR_QUA_ECA0000180375 | Produce |
| FIR_QUA_ECA0000180375.0001 | Produce |

| | |
|---|---|
| FIR_QUA_ECA0001990168 | Produce |
| FIR_QUA_ECA0002311061 | Produce |
| FIR_QUA_ECA0000180307 | Produce |
| FIR_QUA_ECA0000180308 | Produce |
| FIR_QUA_ECA0000180315 | Produce |
| FIR_QUA_ECA0001990109 | Produce |
| FIR_QUA_ECA0001990110 | Produce |
| FIR_QUA_ECA0001990111 | Produce |
| FIR_QUA_ECA0001990112 | Produce |
| FIR_QUA_ECA0001990117 | Produce |
| FIR_QUA_ECA0001990119 | Produce |
| FIR_QUA_ECA0001990126 | Produce |
| FIR_QUA_ECA0001990127 | Produce |
| FIR_QUA_ECA0001990128 | Produce |
| FIR_QUA_ECA0001990164 | Produce |
| FIR_QUA_ECA0002300567 | Produce |
| FIR_QUA_ECA0002300568 | Produce |
| FIR_QUA_ECA0002304505 | Produce |
| FIR_QUA_ECA0002304506 | Produce |
| FIR_QUA_ECA0002304507 | Produce |
| FIR_QUA_ECA0002304508 | Produce |
| FIR_QUA_ECA0002304509 | Produce |
| FIR_QUA_ECA0002319143 | Produce |
| FIR_QUA_ECA0002319156 | Produce |
| FIR_QUA_ECA0002319161 | Produce |
| FIR_QUA_ECA0002319169 | Produce |
| FIR_QUA_ECA0002319170 | Produce |
| FIR_QUA_ECA0001990082 | Produce |
| FIR_QUA_ECA0001990083 | Produce |
| FIR_QUA_ECA0001990086 | Produce |
| FIR_QUA_ECA0002300571 | Produce |
| FIR_QUA_ECA0002304512 | Produce |
| FIR_QUA_ECA0002304513 | Produce |
| FIR_QUA_ECA0001906435 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906435.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0000180195 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906415 | Attorney-Client Privileged |
| FIR_QUA_ECA0000122578 | Attorney-Client Privileged |
| FIR_QUA_ECA0000122578.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0000122578.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906394 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906394.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906394.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001951975 | Attorney-Client Privileged |
| FIR_QUA_ECA0001951975.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001951975.0002 | Attorney-Client Privileged |

| | |
|---|---|
| FIR_QUA_ECA0000122498 | Attorney-Client Privileged |
| FIR_QUA_ECA0000122498.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0000122498.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0001951918 | Attorney-Client Privileged |
| FIR_QUA_ECA0001951918.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001951918.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0000179330 | Produce |
| FIR_QUA_ECA0000179333 | Produce |
| FIR_QUA_ECA0000179153 | Produce |
| FIR_QUA_ECA0000179101 | Produce |
| FIR_QUA_ECA0001987143 | Produce |
| FIR_QUA_ECA0001987147 | Produce |
| FIR_QUA_ECA0000125581 | Attorney-Client Privileged |
| FIR_QUA_ECA0000125581.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0000125581.0002 | Attorney-Client Privileged |
| FIR_QUA_ECA0000140839 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906355 | Attorney-Client Privileged |
| FIR_QUA_ECA0000122411 | Attorney-Client Privileged |
| FIR_QUA_ECA0000122411.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0000140758 | Attorney-Client Privileged |
| FIR_QUA_ECA0000178616 | Produce |
| FIR_QUA_ECA0001906352 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906354 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906354.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0000178574 | Produce |
| FIR_QUA_ECA0000178574.0001 | Produce |
| FIR_QUA_ECA0000178574.0002 | Produce |
| FIR_QUA_ECA0000178576 | Produce |
| FIR_QUA_ECA0000178577 | Produce |
| FIR_QUA_ECA0001906351 | Produce |
| FIR_QUA_ECA0001985755 | Attorney Work Product |
| FIR_QUA_ECA0001985796 | Produce |
| FIR_QUA_ECA0000122235 | Attorney-Client Privileged |
| FIR_QUA_ECA0000122235.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906349 | Attorney-Client Privileged |
| FIR_QUA_ECA0001906349.0001 | Attorney-Client Privileged |
| FIR_QUA_ECA0001985390 | Produce |
| FIR_QUA_ECA0001985394 | Produce |
| FIR_QUA_ECA0001985404 | Produce |
| FIR_QUA_ECA0001985408 | Produce |