IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FIRST QUALITY TISSUE, LLC, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil Action No. 19-428-RGA |
| : | |
| IRVING CONSUMER PRODUCTS : | |
| LIMITED and IRVING CONSUMER : | |
| PRODUCTS, INC. : | |
| : | |
| Defendants. : | |

MEMORANDUM ORDER

The parties had an extensive discovery dispute about assertions of attorney-client privilege. I referred the issue (among others) to a Special Master, who wrote two thorough opinions about the disputes. (D.I. 138; D.I. 148). The Special Master resolved many discrete issues. Many of the resolutions upheld the claims of privilege and are unchallenged. Plaintiff, however, filed objections to almost all the determinations that went against it. (D.I. 159).[1] Defendant responded. (D.I. 166). The challenged documents have all been submitted *in camera*, first to the Special Master (D.I. 148 at 3) and now to me.

I review the objections *de novo*.

The documents at issue, using the characterization the parties and the Special Master used, are seventeen Table 1 documents, consisting of sixteen Excel files and one graphical representation of data, about twenty-eight category 3 documents of Table 3 and about eighty-six category 3 documents of Table 4, consisting of emails between the inventors and the consultant,

---

[1] The Special Master rejected the privilege claims for two product development documents. (D.I. 148 at 13). That ruling is not challenged. (D.I. 159 at 6 (challenging as to Table 3 only "communications")).

which are emails about/relating to the Table 1 documents (Table 3) and emails about/relating to a 2015 paper towel project (Table 4). (D.I. 148 at 10, 12, 14).

I read the objections not as challenging any of the statements of law recited by the Special Master but the application of the law to the facts. What the dispute boils down to is the Special Master's conclusion that Plaintiff did not meet its burden to prove the documents in dispute are protected by the attorney-client privilege. (D.I. 148 at 9, 13, 15).

In this, I agree with the Special Master. Essentially, the Special Master's reasoning, which I adopt, is that the documents themselves do nothing to show that they are protected by the attorney-client privilege, and the only other things Plaintiff timely offered were the Declarations of James E. Sealey, Director of Product Development. (D.I. 160-3; D.I. 160-4). The first Declaration recites that it is based on personal knowledge, but it reads as though written by an "omniscient narrator." Sealey is an inventor, and many of the documents cited in the Declarations are to or from, or copied, him, so the Declarations are, at least for the most part, based on personal knowledge. Some of the conclusions seem strange coming from the Director of Product Development, particularly when there are both in-house counsel—Moshe Oppenheim and Glenn Vicari—and outside patent counsel at Amster Rothstein & Ebenstein who could have offered declarations. (D.I. 160-3, ¶¶ 4, 11). Belatedly, on January 29, 2021, in response to my request for documentary evidence essentially showing that the attorneys or Dr. Malburg were aware of each other's involvement in the relevant work, Plaintiff submitted two declarations, one from Dr. Malburg and the other from one of Amster's lawyers. (D.I. 189). This, after extensive litigation before the Special Master and objections and responses thereto before me, all filed by November 19, 2020. (D.I. 166). At some point, I began working on the objections, and issued two oral orders to Plaintiff to address matters that I wanted addressed. (D.I. 179; D.I. 180).

Plaintiff responded. (D.I. 181). After further review by me, I issued another oral order requesting certain specific information. (D.I. 188). Plaintiff responded with the information and the two declarations, explaining that it was submitting the two declarations because the "issue is of great importance to First Quality." (D.I. 189). Defendant objected. (D.I. 190). The Rules provide that First Quality's opportunity to object was twenty-one days after the Special Master's decision. Fed. R. Civ. P. 53(f)(2). There is no provision in the Rules that permits a party to continue to file pleadings, declarations, etc. simply because the party decides new points are worthy of more attention. New declarations, submitted *ex parte* and not at my request, under the circumstances, are too late.[2] The two declarations are **STRUCK**.

The Special Master did not find the Sealey declarations convincing because, for example, assertions in them were incorrect (D.I. 148 at 7) and other facts made them seem less than convincing (*id.* at 8). I asked for Plaintiff to produce any written agreement between Plaintiff and the consultant. (D.I. 179). In response, I got written Feb. 2012 and Dec. 2016 retainer agreements between Amster and the consultant. (D.I. 181 (*in camera* submission)). The response did not provide any agreement between Plaintiff and the consultant. There is such an agreement, though. The Table 3 documents show that the consultant was hired in late January 2013 by separate agreement to do one day's worth of consulting ($2300) for Mr. Ramaratnam, the lead inventor on the patents-in-suit. (0765, 1129). The work is described on January 17, 2013, as "replicating the normal distribution curves using Rq or other common Mahr surface factors instead of PSS," and was part of an email chain in which Mr. Ramaratnam had on January 10, 2013, described his work as "measuring PSS on various tissue samples and its

---

[2] Pretty obviously, submitting new unsolicited evidence while the Court is working on the issue impacts the efficient use of the Court's time.

relevance to each product." (8743). The consultant described the work as "consulting regarding surface texture analysis." (1129).

The record as a whole does not support the conclusion that the consultant was hired in 2013 to conduct testing and analysis for the purpose of obtaining legal advice. I looked at the Table 1 documents and read each of the disputed Table 3 documents. Thinking perhaps that I had missed something, I gave Plaintiff an extra chance to point me to "documentation" that would show some awareness either by Dr. Malburg that he was providing input for a legal project or by First Quality's attorneys that they wanted some input from Dr. Malburg. (D.I. 188). Plaintiff's letter in response cite five previously-produced emails. (D.I. 189). There was simultaneously an *ex parte* production, but the six newly-produced emails are from 2012 except for 7222, which is redundant proof that First Quality was meeting with its lawyers on January 15-17, 2013. The newly-produced documents are of no help. The five previously-produced emails were ones that I had seen before. The best one for Plaintiff is one in which Mr. Ramaratnam gives the lawyers a one-page summary of Plaintiff's reanalysis of the data "using general surface metrology terms." (7191).

I do not think First Quality has shown that the attorney-client privilege applies to any of the disputed Table 1 and Table 3 documents. First Quality does not argue that any of them were actually communications or parts of communications between the inventors and any attorneys or between the consultant and the attorneys.[3] (D.I. 159 at 6). Plaintiff's position is that everything Dr. Malburg did falls "well within the blanket of privilege." (*Id.* at 7). Plaintiff takes this

---

[3] In its objections, Plaintiff cited numerous cases. For example, it cites *Smithkline Beecham Corp. v. Apotex Corp.*, 232 F.R.D 467, 476-77 (E.D. Pa. 2005), for the proposition that the presence of a consultant does not invalidate the attorney-client privilege when the consultant is the "client's agent or possesses 'a commonality of interest with the client.'" (D.I. 159 at 7). In *Smithkline*, though, the dispute was about a "series of communications between [counsel] and [later identified] third-party consultants."

position because of Mr. Sealey's declaration that Dr. Malburg's consulting work was done "[a]t the direction of Amster." (D.I. 160-3 at ¶ 9).

Attorney-client privilege applies to communications involving technical information when they are made for the purpose of providing or obtaining legal advice. *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000). It follows that the information must actually be communicated to an attorney to meet this standard. *Id.* Given that Dr. Malburg's work at issue was not provided to Amster, it does not really matter whether an attorney said that such work should be done. As best I understand it, Dr. Malburg's analysis and testing at issue was for the benefit of First Quality's understanding, not for the purpose of obtaining legal advice. What was actually communicated to the attorneys is protected by the attorney-client privilege. That does not describe any of the documents at issue. I also note the circumstantial evidence that supports this conclusion – the absence of any email chain in which Dr. Malburg and counsel both appear in some capacity, and the documentation that Dr. Malburg was serving as a consultant to First Quality and not, as he had on other occasions, as a consultant to counsel. Thus, for all these reasons, as to the Table 1 and Table 3 documents, I adopt the Special Master's rulings.

I have considered Plaintiff's argument, which is essentially that there are documents showing an attorney-client meeting (the email setting it up described it as "Patent review with AMSTER") during January 15-17, 2013, about "prepar[ing] information/data for three soft patents." On January 17, Mr. Ramaratnam, the lead inventor, talked with the consultant. It seems pretty clear that Mr. Ramaratnam's contact on January 17 with Dr. Malburg was an outgrowth of those sessions, but I do not think that means all of Dr. Malburg's work thereafter has been shown to be protected by the attorney-client privilege.

As to the Table 4 disputed documents, Plaintiff makes no separate argument. The Special Master ruled on the Table 4 disputes by analogy to the Table 1 and Table 3 rulings. (D.I. 148 at 14-15). As Plaintiff does not make a separate argument about them, I too will decide the dispute by analogy. Thus, since I adopt the Special Master's rulings as to the Table 1 and Table 3 documents, I also adopt the Special Master's rulings as to the Table 4 documents.

Plaintiff is ORDERED to produce the disputed documents.[4]

IT IS SO ORDERED this 29th day of July 2021.

/s/ Richard G. Andrews
United States District Judge

---

[4] I have taken a long time to issue this memorandum order. There are a number of reasons for that. Working on an issue such as the instant one is fact-intensive. It is made more difficult because one side is not able to fully participate. And I am aware that the issue may be extremely important to the side claiming the privilege. It may also be important to the side seeking to set aside the claim of privilege. "The privilege does, after all, hinder the truth-seeking process, and so we carefully police its use." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 361 (3d Cir. 2007).

I do not think the result in this decision threatens the underlying purpose of the attorney-client privilege, which is "full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It does not seem to me that, in the usual case, scientific testing that is not provided to an attorney has much of a claim on being buried during discovery on the basis of attorney-client privilege. I do not see the ruling in this case as being at all inconsistent with the goal of protecting "full and frank communication between attorneys and their clients."