**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| FIRST QUALITY TISSUE, LLC, <br><br> Plaintiff, <br><br><br> v. <br><br> IRVING CONSUMER PRODUCTS LIMITED and IRVING CONSUMER PRODUCTS, INC., <br><br> Defendants. | C.A. No. 19-428-RGA <br><br> ▉▉▉▉▉▉▉▉ <br><br> **REDACTED VERSION** |

**JOINT PROPOSED PRETRIAL ORDER**

FISH & RICHARDSON P.C.
Joseph B. Warden (No. 5401)
Warren Keith Mabey, Jr. (No. 5775)
Nitika Gupta Fiorella (No. 5898)
Casey M. Kraning (No. 6298)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: 302-652-5070
Facsimile:   302-652-0607
warden@fr.com;
mabey@fr.com;
fiorella@fr.com;
kraning@fr.com

Edmond R. Bannon
Jeffrey C. Mok
7 Times Square, 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Facsimile: (212) 258-2291
Email: bannon@fr.com;
jmok@fr.com

Ethan J. Rubin
One Marina Park Drive
Boston, MA 02210-1878
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Jack B. Blumenfeld (#1014)
Rodger D. Smith (#3778)
MORRIS, NICHOLS, ARSHT &
TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com

John G. Day (#2403)
Andrew C. Mayo (#5207)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
jday@ashbygeddes.com
amayo@ashbygeddes.com

Matthew J. Moore
Maximilian A. Grant
Inge A. Osman
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
(202) 637-2200
max.grant@lw.com

Email: erubin@fr.com

*Attorneys for Plaintiff*
*First Quality Tissue, LLC*

matthew.moore@lw.com
inge.osman@lw.com

Charles H. Sanders
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
(617) 948-6000
charles.sanders@lw.com

*Attorneys for Defendants Irving Consumer*
*Products Limited and Irving Consumer*
*Products, Inc.*

Dated:  March 21, 2022

On March 25, 2022, counsel for First Quality Tissue, LLC ("First Quality" or "Plaintiff") and Irving Consumer Products Ltd. and Irving Consumer Products, Inc. (collectively "Irving" or "Defendant") will participate in a pretrial conference before this Court pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16.3.

This case involves First Quality's claim that Irving infringed, and is still infringing, U.S. Patent Nos. 9,506,203 ("the '203 Patent"); 9,580,872 ("the '872 Patent"); and 9,725,853 ("the '853 Patent") (collectively, the "Patents-in-Suit") and Irving's Counterclaims that it has not infringed the Patents-in-Suit and that the Patents-in-Suit are invalid.  Pursuant to this Court's Amended Scheduling Order (*see* D.I. 15; D.I. 258), a 5-day jury trial will take place beginning on April 25, 2022.

This trial will address First Quality's claims that (i) Irving directly infringed claims 1 and 3 of the '203 Patent, claims 1, 3-4, and 8 of the '872 Patent, and claims 4, 10, and 12-13 of the '853 Patent; (ii) Irving's infringement was willful; and (iii) First Quality is entitled to damages in the amount of no less than a reasonable royalty for Irving's infringement.  First Quality further seeks from the Court findings that First Quality is entitled to enhanced damages for Irving's willful infringement, that a permanent injunction should issue against Irving, and that this case is exceptional and First Quality is entitled to its costs and reasonable attorneys' fees as provided by 35 U.S.C. §§ 284 and 285.

The jury trial will also address Irving's defenses and counterclaims, including Irving's defenses and counterclaims of non-infringement of the Patents-in-Suit and the invalidity of the Patents-in-Suit.  Irving furthers seeks a finding that this is an exceptional case under 35 U.S.C. § 285 and thus Irving is entitled to an award of attorneys' fees, and an award of its costs and

expenses incurred in this action together with such other and further relief as the Court may deem just and proper.

The following matters as to the conduct of the trial have been stipulated by the parties and are hereby ordered by the Court:

## I.     NATURE OF THE CASE

1.     This is a patent infringement action filed by First Quality against Irving.  First Quality alleges infringement by Irving of one or more claims of the "Patents-in-Suit."  Irving denies any such infringement.

2.     First Quality filed suit in this Court on March 1, 2019 (D.I. 1).  This Complaint is First Quality's operative pleading.  On July 29, 2019, Irving filed its answer and counterclaims (D.I. 8), which were amended on September 3, 2019 (D.I. 24).  The amended answer and counterclaims is Irving's operative pleading.

3.     First Quality is currently asserting claims 1 and 3 of the '203 Patent, claims 1, 3-4, and 8 of the '872 Patent, and claims 4, 10, and 12-13 of the '853 Patent (collectively, the "Asserted Claims"), against Irving.  First Quality will allege at trial that Irving infringes claims 1 and 3 of the '203 Patent, claims 1, 3-4, and 8 of the '872 Patent, and claims 4, 10, and 12-13 of the '853 Patent.  First Quality seeks damages to compensate for Irving's infringement in the form of a reasonable royalty, enhanced damages for Irving's willful infringement, a permanent injunction against Irving, as well as interest and costs, in accordance with 35 U.S.C. § 284.  First Quality also seeks attorney fees pursuant to 35 U.S.C. § 285.

4.     Irving denies that it has infringed any of the Asserted Claims of the Patents-in-Suit and that First Quality is entitled to any damages.

5.     Irving asserts that the Asserted Claims are invalid.  Irving also disputes the amount of damages that First Quality seeks.

6.      On June 16, 2020, the parties submitted their Joint Claim Construction Brief and Appendix.  (D.I. 79-80).  On June 24, 2020, the Court heard oral argument on claim construction. (D.I. 86).

7.      On June 30, 2020, the Court issued its Memorandum Opinion on Claim Construction (D.I. 83), which was followed on July 8, 2020 by the Court's Claim Construction Order (D.I. 85).

8.      On January 14, 2022, the Court ordered the parties to propose constructions for an additional term, "an outer surface" and/or "comprising an outer surface."  (D.I. 270).  The parties submitted their competing constructions, (D.I. 271-272), and the Court heard oral argument on January 19, 2022, (D.I. 281).

9.      On January 21, the Court issued its Supplemental Order on Claim Construction. (D.I. 275).

10.      The Court's construction of terms appearing in the Asserted Claims are as follows:

| Term | Court's Construction |
|---|---|
| "Through air dried tissue" | The preamble is limiting. "Through air dried tissue" is construed as "tissue having a pattern or structure of the sort produced by a TAD fabric." It is not a product-by-process limitation. It is entitled to patentable weight. |
| "Through air dried" | "Through air dried" will not be construed separately from "through air dried tissue." |
| "Average Peak to Valley Waviness" | Average peak height plus average valley depth (both taken as positive values) relative to the meanline, as computed and measured according to the procedure of the '203 Patent at 9:31-57 [and correspondence disclosure of the other Asserted Patents].<br><br>The Wc values are obtained by averaging 200 scans from ten samples. |

| "Average Primary Amplitude" | Average distance between each roughness profile point and the meanline, as computed and measured according to the procedure of the '203 Patent at 9:31-57 [and corresponding disclosure of the other Asserted Patents].<br><br>The Pa values are obtained by averaging 200 scans from ten samples. |
|---|---|
| "Layer" | A thickness of material lying over or under another. |
| "An outer surface" | The surface of the outer side of the through air dried tissue. |

11.     On March 19, 2021, the parties filed dispositive motions, including *Daubert* motions to exclude expert testimony.

12.     First Quality describes its motions as follows:  First Quality filed a motion to exclude certain testimony by Irving's expert Dr. Steven Keller advocating and using an improper claim construction of "an outer surface"; discussing so-called "optical" or "non-contact" profilometry; and merely rubber-stamping attorney argument that is predicated on materials Dr. Keller admitted to have never reviewed.  Moreover, First Quality moved to exclude certain testimony by Irving's expert Mr. Dale Kavalew regarding unreliable data and analysis predicated on (1) present-day testing not shown to reflect prior art; (2) information shielded from discovery; and (3) data that Mr. Kavalew cannot confirm the reliability of.  First Quality also moved to exclude certain testimony by Irving's expert Dr. James Malackowski regarding non-comparable licenses, and regarding the unsupported use of a denser embossing pattern as a supposed non-infringing alternative.

13.     Irving describes its motions as follows:  Irving filed a motion for summary judgment that all Asserted Claims are invalid for indefiniteness because (i) there are multiple ways to measure the claimed values (Average Peak to Valley Waviness (Wc) and Average Primary

Amplitude (Pa)); (ii) unrebutted evidence shows that those different ways can materially affect the results; and (iii) the patents fail to provide any guidance on which way to use.  Irving moved to find all the Asserted Claims invalid for lack of written description because (i) the patents disclose no tissue having the claimed Wc and Pa *plus* any of the other claimed properties such as bulk softness of less than 10TS7, hand-feel softness of at least 90, or caliper of less than 650 microns and (ii) the patents fail to disclose the claimed ranges of Wc and Pa because the patents only disclose a single Wc value and single Pa value close to the upper end of the respective claimed ranges.  Irving also moved to exclude certain testimony by First Quality's experts, Drs. Troy Runge and Robert Maness, related to alleged copying by Irving because copying is a factual issue and the jury would not be aided by expert testimony on copying.  In addition, Irving moved to exclude Dr, Maness's damages opinion because he committed five legal errors.  Dr. Maness (i) refused to adjust the royalty base to exclude non-infringing activity; (ii) erroneously applied a rule of thumb; (iii) effectively disgorged Irving's profits, which is not permissible in a patent case; (iv) failed to apportion any value to unpatented features of the accused tissue; and (v) based his royalty, in part, on the opinion that paper towels are convoyed sales even though they have no functional relationship to the accused bathroom tissue.

14.     The Court heard oral argument on the pending summary judgment motions, and certain of the pending *Daubert* motions, on January 19, 2022.  (D.I. 281).  At the end of the hearing, the Court gave the parties three instructions.  First, the Court requested that the parties provide up to three cases regarding open-ended ranges.  (*See id*. at 133:16-134:2).  Both parties submitted letters attaching additional case law on January 21, 2022.  (D.I. 276-277).  Second, the Court ordered Irving to make Ms. Ida Lamanna available for a 90-minute deposition.  (*See* D.I. 281 at 134:5-20, 138:19-139:2).  That deposition took place on February 18, 2022.  Third, the Court

instructed "Dr. Maness has to apportion," that the Court "intend[s] to strike whatever flows form that," and directed the parties to meet and confer regarding Dr. Maness's performing an apportionment analysis.  (*See* D.I. 281 at 139:3-140:11).   The parties agreed to a schedule permitting (i) First Quality to submit a supplemental expert report from Dr. Maness by February 11, 2022; (ii) Irving to submit a supplemental responsive expert report from Mr. Malackowski by March 4, 2022; and (iii) both parties to take a supplemental deposition of the opposing damages expert by March 23, 2022.

15.     Additionally, following the Court's Supplemental Order on Claim Construction, issued on January 21, 2022, (D.I. 275), the Court asked the parties to submit a joint letter identifying any pending summary judgment and/or *Daubert* issues that may have been impacted by the construction and whether additional briefing was requested, (D.I. 278).   Irving requested additional briefing on its written description and indefiniteness arguments, (D.I. 279), and the Court granted the briefing, (D.I. 280).   The parties submitted the supplemental briefing, which was completed on February 11, 2022.   (*See* D.I. 282-283, 286-287, and 288-289).

16.     Aside from the pending summary judgment and *Daubert* motions and the motions *in limine* discussed herein (*see* Section IX), Irving's objections to the Special Master Order #15 (D.I. 242) are pending.   First Quality produced an additional set of documents on August 2, 2021. Upon review, Irving requested additional documents on August 3.   First Quality objected to producing any additional documents.   Irving moved to compel production of additional documents on August 13th.   (D.I. 239).   The Special Master denied Irving's motion with respect to production of documents on August 20th (D.I. 242).   Irving objected, (D.I. 261), and the objections are currently pending.

17.     The parties deferred the depositions of certain third parties implicated by the pending privilege dispute—including Digital Metrology (the software vendor for the software required by the Asserted Patents), Mahr (the manufacturer of the machine required to measure Wc and Pa required by the Asserted Patents), and the prosecuting attorneys and their law firm.  Irving reserves the right to take those depositions if its objections to the Special Master's Order #15 (D.I. 261) are sustained.  In addition, the parties stipulated that the two-hour 30(b)(6) deposition of First Quality, ordered by Special Master Order #16, will occur within 14 days of the Court's ruling on Irving's Objections to Special Master Order #15 regarding privilege.  (D.I. 258).

18.     The Court has scheduled a pretrial conference for March 25, 2022.

19.     Trial is scheduled to begin on April 25, 2022.

20.     First Quality requests a jury trial on all issues triable to a jury.

## II.     JURISDICTION

21.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100, *et seq*.  No party contests personal or subject matter jurisdiction for purposes of this action, and this Court has subject matter jurisdiction over this action pursuant to 33 U.S.C. §§ 271 *et seq*. and 28 U.S.C. §§ 1331 and 1338(a).  No party contests venue for purposes of this action in this Court under 28 U.S.C. § 1400(b).

## III.    FACTS

### A.     Uncontested Facts

22.     Attached as **Exhibit 1** is a list of facts that are not disputed or have been agreed to by the parties.  Any party, with prior notice to all other parties, may read any or all of the uncontested fasts to the jury or Court as agreed by the parties or allowed by the Court, and will be charged for the time used to do so.

### B.     Contested Facts

23.     Attached as **Exhibit 2** is a list of issues of fact which First Quality contends remain to be litigated.  Attached as **Exhibit 3** is a list of issues of fact that Irving contends remain to be litigated.  The parties reserve the right to modify or supplement their lists of issues of fact that remained to be litigated to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent order of the Court or by agreement of the parties.  By including a fact herein, neither party assumes the burden of proof or production with regard to that fact.

## IV.    ISSUES OF LAW

24.     Attached as **Exhibit 4** is a list of issues of law which First Quality contends remain to be litigated.  Attached as **Exhibit 5** is a list of issues of law that Irving contends remain to be litigated.  The parties reserve the right to modify or supplement their list of issues of law that remain to be litigated to the extent necessary to fairly reflect the Court's rulings on any motions or subsequent order of the Court or by agreement of the parties.

## V.     WITNESSES

### A.     Order of Proof

25.     The parties agree that the presentation of evidence will follow the burden of proof at trial.  First Quality will first present its case on infringement and damages.  Irving may then present its response on non-infringement and damages along with its case-in-chief on invalidity.  First Quality may then present its response on validity and rebuttal on infringement and damages.  Irving may then present its rebuttal on invalidity.

### B.     First Quality's List of Witnesses to be Called

26.     First Quality intends to call the following witnesses at the upcoming trial.  First Quality also reserves the right to call any witness that appears on Irving's witness list without waiving any objections to the admissibility of testimony offered by Irving.  First Quality reserves the right to call any other witnesses as necessary for impeachment and/or rebuttal.  If Irving

challenges the authenticity of any documents, articles, or things presented by First Quality at trial, First Quality reserves the right to call additional witnesses as may be required for document authentication.

| Name | Will Call Live | May Call Live | May call by Deposition |
|------|----------------|---------------|------------------------|
| James E. Sealey | X | | |
| Glenn Vicari | X | | |
| Mika Massey | X | | |
| Justin Pence | X | | |
| Scott Crownover | X | | |
| Chris Brown | X | | |
| Troy Runge | X | | |
| Robert Maness | X | | |
| Ralph Forte | X | | |
| Phil Viger | X | | |
| Alan Barc | X | | |
| Shondra Jones | | X | |
| Samuel Mitton | | | X |
| Ida Lamanna | | | X |
| Ken Landman | | | X |
| Stephen Lahn | | | X |
| Jeff Herman | | | X |
| John Brewer | | | X |
| Grant Currier | | | X |
| Doug Westwell | | | X |
| Youn Suh | | | X |

### C.   Irving's List of Witnesses to be Called

27.    Irving intends to call the following witnesses at the upcoming trial.  Irving also reserves the right to call any witness who appears on First Quality's witness list without waiving any objections to the admissibility of testimony offered by First Quality.  Irving reserves the right to call any other witnesses as necessary for impeachment, rebuttal, or both.  If First Quality challenges the authenticity of any documents, articles, or things presented by Irving at trial, Irving reserves the right to call additional witnesses as may be required for document authentication. Irving also reserves the right to add any witnesses whom Irving has not yet deposed pursuant to

the deferral of third-party depositions implicated by the privilege dispute and Irving's objections that remain pending before the Court, and/or to designate from deposition transcripts of depositions that are occurring concurrently or have yet to occur.  Irving reserves the right to call by deposition any First Quality witness listed on the "may call live" list who does not testify live.

28.     The parties agree that Jeff Herman may be called by deposition.

| Name | Will Call Live | May Call Live | May call by Deposition |
|------|----------------|---------------|------------------------|
| Alan Barc | X | | |
| Ralph Forte | X | | |
| Shondra Jones | | X | |
| Dale Kavalew | X | | |
| Steven Keller | X | | |
| Scott Crownover | | X | |
| Ida Lamanna | | X | |
| James Malackowski | | X | |
| Samuel Mitton | | X | |
| Mika Massey | | X | |
| Justin Pence | | X | |
| James Sealey | | X | |
| Youn Suh | | X | |
| Glenn Vicari | | X | |
| Heather Engel | | | X |
| Shane Hayes | | | X |
| Jeff Herman | | | X |
| Steven Hoffman | | | X |
| Daniel Jacques | | | X |
| Tyler Miller | | | X |
| Courtney Kessling | | | X |
| Karthik Ramaratnam | | | X |
| John LaFond | | | X |
| Ellen Pelky | | | X |

### D.     Agreed Upon Procedures for Live Witnesses

29.     With the exceptions noted above, any witness not listed in the Sections above will be precluded from testifying absent good cause.

30.     With the exception of expert witnesses and a corporate representative for each party, the parties agree that witnesses should be prevented from hearing the testimony of other

witnesses pursuant to Federal Rules of Evidence 615.  Fact witnesses may attend trial after their testimony is complete and the Court has released them.  Counsel for the parties shall notify one another by e-mail of their corporate representative no less than one week before the first day of trial—currently, by **April 18, 2022.**

31.     If a witness becomes unavailable for trial, the parties agree to timely notify the other parties and supplement their witness list.  If a fact witness that either party has identified as testifying live at trial becomes unavailable, each party reserves the right to call that witness by deposition, as set forth below in this pretrial order.

32.     The parties each reserve the right to call any witness who appears on the other party's list of live witnesses it "will call live," if that witness is not called by the party listing that witness.

33.     Each party will provide the other party with a list, in order of presentation, of witnesses it intends to call live on direct examination (including any additional witnesses to be called by adverse direct examination) by **7:00 p.m. two days before** those witnesses are intended to testify in Court.  For example, if a party intends to call a witness on Monday, that party shall disclose that witness's name to the opposing party no later than 7:00 p.m. on the preceding Saturday.  This list must also include those witnesses who are to be called by designation.  This list is the anticipated order of the proof, but if there will be adjustment to the order for that particular day, the other side must be timely informed.  If a party intends to call one of the other's party's employees to testify live, that party intending to call the adverse witness must notify the opposing party **by 7:00 pm six days before** those witnesses are intended to testify in Court.

### E.     Testimony by Designation

34.     First Quality's preliminary list of designations, counter designations, and counter-counter designations of prior testimony, along with objections thereto, is attached hereto as **Exhibit 6**.

35.     Irving's preliminary list of designations, counter designations, and counter-counter designations of prior testimony, along with objections thereto, is attached hereto as **Exhibit 7**.

36.     The parties will continue to meet and confer in an effort to address and narrow their respective designations of prior testimony, including objections.

37.     Each party will provide the other with a list of final deposition designations (from the previously designated testimony) that it intends to introduce by **7:00 p.m. three days before** the date on which designations are intended to be used in court.  For example, witnesses to be called by designation on Monday must be disclosed by 7:00 p.m. the preceding Friday, along with their proposed testimony.  The other side must identify any objections to the designated testimony and any counter designations no later than **7:00 p.m. two days before** the date on which the designations are intended to be used in court.  The originally designating party may identify any counter-counter designations by **8:30 p.m. two days before** the designations are intended to be used.  The parties shall then meet and confer as to any objections no later than **9:30 p.m.** that day. Any unresolved objections will be raised with the Court the next morning—i.e., one day before the date on which the designations are intended to be used in court.  For designations that are intended to be played in Court on the first day of trial, Monday, April 25, the parties will raise any unresolved objections with the Court by 7:30 a.m. on the first day of trial.  Failure to comply with these procedures, absent an agreement by the parties and approval of the Court, will result in waiver of the use of the testimony or waiver of objection to the use of the testimony.

38.     All designations and counter-designations shall be read or played in chronological order, at the same time, and in the same manner.  The manner is to be determined by the party calling the witness.  All irrelevant and redundant material, such as objections and colloquy between counsel, will be eliminated when the deposition is read or played for the jury, except where necessary to understand the designated testimony.

39.     When deposition designations are read or played at trial, each party will be charged for the time taken to read or play its designations, as measured by the proportion of lines of testimony for its designations to the total number of lines of testimony read, or by the actual time for video testimony if played.

40.     For those witnesses whose prior deposition or trial testimony will be read or played to the jury, the parties shall be permitted to make brief transition statements to introduce the witnesses and their role in the litigation.  However, counsel shall not be permitted to argue or comment on the evidence during transition statements.

## VI.    EXHIBITS

### A.    Exhibits

41.     First Quality's list of pre-marked exhibits to be offered at trial is attached hereto as **Exhibit 8**.  Irving reserves all objections to First Quality's excessively voluminous exhibit list, which lists about 1,100 exhibits for a 5-day jury trial.[1]  First Quality likewise reserves all objections to Irving's own voluminous exhibit list, which includes approximately 500 exhibits, and objects

---

[1] Irving disagrees that First Quality's list of 1,100 exhibits can constitute a good faith effort by First Quality to identify the exhibits that will be or could be used in 13 hours of trial time.  This Court requires a witness to discuss an exhibit before it is accepted into evidence; First Quality would have to discuss over 40 exhibits per hour (which includes cross examination) to use half its marked exhibits.  Irving first raised this issue via email on July 30, 2021. First Quality refused to narrow its exhibit list.  Irving then raised this issue again on February 14, 2022, and First Quality again refused to narrow its exhibit list.

to Irving's blanket objections to every exhibit on First Quality's exhibit list.  First Quality also specifically objects to the documents that Irving never disclosed during fact or expert discovery, but which appear on Irving's exhibit list as DTX-219 through DTX-235.  These are zipped folders that appear to contain hundreds, if not thousands, of files that were never disclosed.[2]  Irving's list of pre-marked exhibits to be offered at trial is attached hereto as **Exhibit 9**.  Each party has set forth objections to any exhibit in the other party's exhibit list with citation to the Federal Rules of Evidence.

42.    **Exhibits 8-9** contain the parties' good-faith efforts to identify the maximum universe of exhibits to be used in any party's case-in-chief, as well as all objections to the admission of such exhibits.  A party may offer any exhibit appearing on either party's exhibit list, subject to evidentiary objections.  To the extent any exhibit was included in a party's designations but inadvertently omitted from that party's exhibit list, the parties agree that this exhibit may be added to that party's exhibit list.  Exhibits otherwise not listed will not be admitted absent court order or by agreement of the parties, on good cause shown.

43.    No later than **April 22, 2022**, one business day before the start of trial, the parties shall make available for inspection physical exhibits.

---

[2] Irving disputes First Quality's characterization of DTX-219 through DTX-235.  These files represent the .prf data files (scans from the Mahr machine) that Irving's experts Dr. Keller and Mr. Kavalew described, relied upon, and referenced throughout their expert reports.  First Quality has been aware of the existence and content of these files since Irving's expert reports were served in November and December 2020.  First Quality never requested any .prf files, nor complained about not receiving any .prf files during expert discovery, and none of First Quality's experts addressed any .prf files from Irving's experts' testing.  Irving further notes that First Quality's own exhibit list similarly includes zip files each containing hundreds of .prf data files reviewed by their experts. *See, e.g.* PTX-0409, PTX-0410, PTX-0457 through PTX-0464; PTX-0469 through PTX-0474.  Nonetheless, to resolve any alleged concern, Irving has provided First Quality with a chart correlating each .prf file contained in DTX-219 through DTX-235 with its original production date and production name.

44.     At some point before the completion of the witness's testimony, any party that has used an exhibit with the witness and wishes that exhibit to be admitted into evidence must formally move the exhibit into evidence, by exhibit number.  Exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence.  Once admitted, counsel may publish exhibits to the jury without requesting to do so.  Any exhibit, once admitted, may be used equally by any party.

45.     A party will identify exhibits to be used in connection with direct examination of each witness (and any written discovery designations and exhibits to be admitted by deposition designation) by **7:00 p.m. the day before** their intended use, and objections will be provided no later than **8:30 p.m. that day**, and the parties will meet and confer regarding any unresolved objections by **9:30 p.m. that same day**.  If good-faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to the Court's attention the morning of the proposed use of the disputed exhibit.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of an exhibit or waiver of objection to the exhibit.

46.     Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony, provided they are shown to a witness (or are written discovery designations or are addressed in deposition designations) and moved into evidence as provided above.  Nothing herein shall be construed as a stipulation or admission that the document is entitled to any weight in deciding the merits of this case.  The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

47.     Any party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections. Any exhibit, once admitted, may be used equally by each party, subject to any limitations as to its admission. The listing of a document on a party's exhibit list is not an admission that such document is relevant, or admissible, when offered by the opposing side for the purpose that the opposing side wishes to admit the document. Each party reserves the right to object to the relevance of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

48.     Legible photocopies of United States patents and the content of PTO file histories may be offered and received in evidence in lieu of certified copies thereof. The parties stipulate that, as to patents previously identified, the dates of filing and issuance shall be deemed to be shown on the face of the patent, subject to the right of the party against whom it is offered to adduce evidence to the contrary.

49.     Legible photocopies of printed publications (with agreed upon English translations thereof) may be offered and received in evidence in lieu of originals thereof.

50.     The parties stipulate that a duplicate of any document or photograph may be marked for identification, and, if otherwise admissible, offered and received into evidence with the same force and effect as the original, subject to any and all objections as could be made to the original, and on condition that the original of any such duplicate, if within the custody or control of a party, be available for inspection at the trial upon reasonable notice.

51.     The parties agree that documents are deemed genuine and authentic and have been prepared in the ordinary course of business on or about the dates that are reflected on the document, and therefore are admissible, if they are (a) a document produced in this case from a party's files;

or (b) a United States or foreign patent office publication.  For clarity, (a) a document produced in this case from a party's files or (b) a United States or foreign patent office publication shall be admissible upon being used during any fact or expert witness's examination.  The parties reserve the right with respect to individual documents to adduce proof to the contrary or to require that the offering party provide authenticating evidence or evidence the document is not a business record if the opposing party has a reasonable basis to believe the document is not authentic or not a business record and if an appropriate objection was made by the opposing party on the exhibit lists attached to this Order.  This stipulation shall not be deemed or interpreted to be a waiver of any other objections a party may have or a stipulation that any document is admissible in evidence, except that the parties stipulate that (a) a document produced in this case from a party's files or (b) a United States or foreign patent office publication shall be admissible (without objection) if it was discussed in an expert report and is used during examination of an expert witness.

52.     Any documents or deposition or portion thereof, not specifically identified herein or offered into evidence, may still be used at trial for purposes of impeachment or rehabilitation, if otherwise competent for such purposes.

53.     On or before the first day of trial, each party will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list corresponding to their respective final exhibit lists.

**B.     Demonstratives**

54.     The parties agree that the demonstrative exhibits that the parties intend to use at trial do not need to be included on their respective exhibit lists that are part of this Final Pretrial Order.  First Quality's demonstrative exhibits will be identified with PDX numbers.  Irving's demonstrative exhibits will be identified with DDX numbers.

55.     The parties will exchange demonstratives to be used in opening statements by **7:00 p.m. the day before** opening statements.  The parties will provide any objections to such

demonstratives by **8:30 p.m. that same day**.  The parties shall meet and confer in an attempt to resolve those objections by **9:30 p.m. that same day**.

56.     Demonstratives to be used on direct examination will be exchanged pursuant to the procedures set forth below.  These provisions do not apply to demonstratives created during testimony or demonstratives to be used for cross-examination, neither of which need to be provided to the other side in advance of their use.

57.     A party will provide demonstrative exhibits to be used in connection with direct examination by **7:00 p.m. the day before** their intended use, and objections will be provided not later than **8:30 p.m. that same day**. The parties shall then meet and confer as to any objections no later than **9:30 p.m. that same day**.  If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

58.     The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF or other electronic form labeled with the exhibit or demonstrative number.  Exchange of large boards is not required, and these demonstrative exhibits may be exchanged in 8½" x 11" format with the PDF/electronic exhibits being exchanged at that same time.  For demonstrative exhibits that cannot be placed in PDF form such as video or animations, the party seeking to use the demonstrative exhibit will provide it to the other side via a downloadable link in a format, such as MPEG, MOV, WMV, that can be viewed by standard software applications for viewing video and animations.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony, and which contain no additional markings, alterations, commentary, or argumentative headings, are not required to be provided to the other side in advance of their use.

59.     If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand.  Failure to comply with these procedures, absent an agreement by the parties and approval by the Court, will result in waiver of the use of a demonstrative or waiver of objection to the demonstrative.

60.     Demonstratives to be used in closing arguments need not be exchanged or disclosed ahead of time.

## VII.    PLAINTIFF'S STATEMENT OF INTENDED PROOF

61.     First Quality's statement is limited to its expected proof with regard to the claims for which it has the burden of proof and does not address proof that First Quality may present in rebuttal to evidence Irving may present on the issues for which it has the burden of proof. First Quality's statement is based upon the current status of the case and the Court's current rulings. First Quality reserves the right to revise this statement in light of any further decisions or orders of the Court.

62.      First Quality intends to prove by a preponderance of the evidence that Irving has infringed the Asserted Claims of the Patents-in-Suit by making, using, offering for sale, and selling in the United States the accused Sam's Club Member's Mark products.

63.     First Quality intends to prove by a preponderance of the evidence that the accused products each satisfy each limitation of claims 1 and 3 of the '203 Patent because each product comprises a through air dried tissue comprising an outer surface Average Peak to Valley Waviness of 140 microns or less and a Waviness Uniformity of 27 microns or less, the tissue having a bulk softness of less than 10TS7; and each product comprises a multi-ply sheet comprising two or more plies, at least one of the two or more plies comprising a tissue of claim 1.

64.     First Quality intends to prove by a preponderance of the evidence that the accused products each satisfy each limitation of claims 1, 3-4, and 8 of the '872 Patent because each product comprises a through air dried tissue comprising an outer surface having an Average Peak to Valley Waviness of 140 microns or less, a Waviness Uniformity of 27 microns or less, an Average Primary Amplitude of 50 microns or less and an Amplitude Uniformity of 8 microns or less;  each product comprises a tissue of claim 2, further comprising an interior layer; each product comprises a tissue of claim 1 wherein the tissue has a bulk softness of less than 10TS7; and each product comprises a multi-ply sheet comprising two or more plies, at least one of the two or more plies comprising a tissue of claim 1.

65.     First Quality intends to prove by a preponderance of the evidence that the accused products each satisfy each limitation of claims 4, 10, and 12-13 of the '853 Patent because each product comprises a through air dried tissue having a bulk softness of less than 10TS7 and comprising an outer surface having an Average Peak to Valley Waviness of 140 microns or less; each product comprises a two-ply, through air dried tissue of claim 8, wherein the outer surface has an Average Peak to Valley Waviness of 135 microns or less; each product comprises a two-ply, through air dried tissue of claim 8, wherein the tissue has a softness of at least 90; and each product comprises a two-ply, through air dried tissue of claim 8, wherein the tissue has a caliper of less than 650 microns.

66.     First Quality intends to prove by a preponderance of the evidence that Irving's infringement of the claims of the Patents-in-Suit was willful.

67.     First Quality will prove that it is entitled to reasonable royalty damages for Irving's infringement.

68.     The time period of damages will be found to begin as of October 17, 2018 and end with the expiration of the last asserted patent or until an injunction is granted.  Sales data and forecasts produced by Irving indicate that during the damages period through the end of 2020, Irving's sales of the infringing product have been ███████████

69.     First Quality will prove that a royalty rate of at least ███████████ for Irving's sales of the accused products is appropriate.  The royalty rate is multiplied by a royalty base of Irving's revenue during the damages period.  For the period through the end of 2020, this totals ████████  First Quality will supplement this figure to reflect revenue for sales taking place in 2021 and 2022 once Irving provides that information.

70.     In addition, First Quality will also rely on the *Georgia-Pacific* factors and the hypothetical negotiation to prove its damages.

71.     First Quality will also prove that an injunction which prevents Irving from further making, using, offering for sale, and selling in the United States the accused Sam's Club Member's Mark products is necessary to prevent irreparable harm to First Quality.

72.     First Quality preserves its right to prove that this case is exceptional, and that it is thus entitled attorney's fees under 35 U.S.C. § 285.  First Quality also preserves its right to be awarded pre-judgment and post-judgment interest, as well as any other monetary and equitable relief deemed just and proper by the Court.

73.     Additionally, should Irving make a prima facie showing that any of the Asserted Claims of the Patents-in-Suit are obvious, First Quality intends to introduce evidence of secondary considerations sufficient to rebut Irving's evidence.

## VIII.   DEFENDANTS' STATEMENT OF INTENDED PROOF

74.     Irving respectfully submits the following brief statement of what it intends to prove at trial, including both as part of its defenses and as part of its counterclaims.  Irving also intends

to offer evidence as to the issues of fact and of law identified elsewhere in this Pretrial Order, and to offer evidence to rebut the evidence and allegations offered by First Quality.  Irving's statement is based upon the current status of the case and the Court's current rulings, and Irving reserves the right to supplement or revise this statement in response to First Quality's pretrial activities, any subsequent discovery, or any further decisions or orders of the Court.  The parties deferred the depositions of certain third parties implicated by the pending privilege dispute—including Digital Metrology (the software vendor for the software required by the Asserted Patents), Mahr (the manufacturer of the machine required to measure Wc and Pa required by the Asserted Patents), and the prosecuting attorneys and their law firm.  Irving reserves the right to take those depositions if its objections to the Special Master's Order #15 (D.I. 261) are sustained.  In addition, the parties stipulated that the two-hour 30(b)(6) deposition of First Quality, ordered by Special Master Order #16, will occur within 14 days of the Court's ruling on Irving's Objections to Special Master Order #15 regarding privilege.  (D.I. 258).  As a result, Irving reserves the right to revise this statement of proof, and all other parts of this pretrial order, as necessary in response to the additional 30(b)(6) and third party depositions, and the production of the documents and taking deposition discovery following their production, including supplementing expert reports and if warranted to bring claims of inequitable conduct.  Irving incorporates by reference its contentions, interrogatory responses, and expert reports, each of which further explain these intended proofs.

### A.      Non-Infringement

75.      Irving intends to rebut First Quality's allegations and evidence of infringement.

76.      Irving intends to demonstrate that First Quality has failed to prove that the accused Sam's Club Member's Mark tissue literally infringes any of the asserted claims of the '203, '872, or '853 patents.  For example, Irving intends to demonstrate that the accused Member's Mark tissue does not have an outer surface having an Average Peak to Valley Waviness of 140 microns

or less, as required by every asserted claim. Irving further intends to demonstrate that the accused tissue does not have the Waviness Uniformity, Average Primary Amplitude, Amplitude Uniformity, bulk softness, or handfeel softness values required by the asserted claims. Irving further intends to demonstrate that the analysis conducted by First Quality's experts to demonstrate infringement is both flawed, and fails to provide information that is representative of the tissue purportedly analyzed.

77.     Irving intends to rebut First Quality's allegations regarding willfulness, and will demonstrate that should any claim be found valid and infringed, any infringement by Irving was not willful.

### B.     Invalidity

#### 1.     35 U.S.C. § 102

78.     Irving intends to prove by clear and convincing evidence that the Puffs by Royale product anticipates each asserted claim of the '203, '872, and '853 patents.

79.     Irving intends to prove by clear and convincing evidence that the P&G Puffs Sample 1 product anticipates each asserted claim of the '203, '872, and '853 patents.

80.     Irving intends to prove by clear and convincing evidence that the P&G Puffs Sample 3 product anticipates each asserted claim of the '203, '872, and '853 patents.

81.     Irving intends to prove by clear and convincing evidence that the P&G Puffs Sample 4 product anticipates each asserted claim of the '203, '872, and '853 patents.

82.     Irving intends to prove by clear and convincing evidence that the Charmin Ultra Soft product anticipates each asserted claim of the '203, '872, and '853 patents.

83.     Irving intends to prove by clear and convincing evidence that the Charmin Ultra product anticipates asserted claims 1 and 8 of the '872 patent, and asserted claims 10 and 13 of the '853 patent.

84.     Irving intends to prove by clear and convincing evidence that the Charmin Soft product disclosed in the asserted patents anticipates asserted claims 1, 3, and 8 of the '872 patent, and asserted claim 10 of the '853 patent.

85.     Irving intends to prove by clear and convincing evidence that the KC Scott Extra Soft 2010 product anticipates asserted claims 1 and 3 of the '872 patent.

86.     Irving intends to prove by clear and convincing evidence that the KC Scott Extra Soft 2012 product anticipates asserted claims 1 and 3 of the '872 patent.

## 2.     35 U.S.C. § 103

87.     Irving intends to prove by clear and convincing evidence that each asserted claim of the '203, '872, and '853 patents would have been obvious to a person of ordinary skill as of August 3, 2012, in light of the scope of each claim, the level of skill in the art at that time, the scope and content of the prior art, and the lack of differences between the prior art and each claim. If First Quality submits any proper objective indicia of non-obviousness, Irving intends to demonstrate that First Quality has failed to prove that those indicia overcome Irving's proof (including any objective indicia of obviousness) that the asserted claims would have been obvious.

## 3.     35 U.S.C. § 112

88.     Irving intends to prove by clear and convincing evidence that the asserted claims of the '203, '872, and '853 patents are invalid for indefiniteness as the claims, read in light of the specification and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.  For example, Irving intends to demonstrate that there are multiple ways to measure and calculate the claimed surface roughness characteristics (Average Peak to Valley Waviness, Waviness Uniformity, Average Primary Amplitude, and/or Amplitude Uniformity) on the outer surface of tissue, that the specification does not provide any guidance on

which way should be selected, and that this selection can materially impact whether a tissue satisfies the limitations of each asserted claim.

89.     Irving intends to prove that the asserted claims of the '203, '872, and '853 patents are invalid for lack of written description because the specification of each patent fails to describe the claimed inventions in sufficient detail to allow one of ordinary skill to reasonably conclude that the inventors had possession of those claimed inventions.  For example, the patents do not disclose any tissue that has the combination of characteristics recited by each of claims 1 and 3 of the '203 patent, claim 4 of the '872 patent, and claims 12 and 13 of the '853 patent.  The patents also fail to show possession of the broad ranges of surface roughness characteristics recited in each asserted claim of the '203, '872, and '853 patents.

### C.     No Damages

90.     First Quality bears the burden of proving that, should any asserted claim of the '203, '872, or '853 patent be found valid and infringed, it is entitled to damages or injunctive relief. Irving intends to rebut First Quality's allegations regarding damages, and will demonstrate that should any claim be found valid and infringed, the appropriate amount of reasonable royalty compensation in this case is, at most, █████████████████████████

### D.     No Injunctive Relief, Exceptional Case, Attorneys' Fees and/ Costs

91.     If any valid claim is found infringed, Irving will rebut First Quality's allegations regarding injunctive relief because no injunctive relief is warranted.

92.     Irving intends to rebut First Quality's allegations that this case is exceptional in First Quality's favor, that First Quality is entitled to attorney's fees under 35 U.S.C. § 285, and that First Quality is entitled to costs, pre- or post-judgment interest, or any other form of monetary or equitable relief from the Court.

93.     Irving preserves its own right to prove that this case is exceptional in Irving's favor, and that as a result, Irving is entitled to attorney's fees under 35 U.S.C. § 285, as well as to any other relief deemed just and proper by the Court.

## IX.   MOTIONS IN LIMINE

94.     The briefing for First Quality's motion *in limine* No. 1 is attached as **Exhibit 11A**.[3] The briefing for First Quality's motion *in limine* No. 2 is attached as **Exhibit 11B**. The briefing for First Quality's motion *in limine* No. 3 is attached as **Exhibit 11C**.

95.     The briefing for Irving's motion *in limine* No. 1 is attached as **Exhibit 12A**.  The briefing for Irving's motion *in limine* No. 2 is attached as **Exhibit 12B**. The briefing for Irving's motion *in limine* No. 3 is attached as **Exhibit 12C**.

## X.   DISCOVERY

96.     First Quality has completed discovery in this case in the first instance.   First Quality, however, reserves the right to seek any further discovery that may be appropriate based on the Court's ruling on any *Daubert*, summary judgment, or other motion and to rely on the information obtained.

97.     Irving has completed discovery in this case with the exception of the depositions of certain third parties implicated by the pending privilege dispute—including Digital Metrology (the software vendor for the software required by the Asserted Patents), Mahr (the manufacturer of the machine required to measure Wc and Pa required by the Asserted Patents), and the prosecuting attorneys and their law firm, which the parties deferred.  Irving reserves the right to take those depositions if its objections to the Special Master's Order #15 (D.I. 261) are sustained.  In addition, the parties stipulated that the two-hour 30(b)(6) deposition of First Quality, ordered by Special

---

[3] The parties are working on a joint stipulation to potentially obviate First Quality's motion *in limine* No. 1.

Master Order #16, will occur within 14 days of the Court's ruling on Irving's Objections to Special Master Order #15 regarding privilege. (D.I. 258). Irving reserves the right to seek any further discovery that may be appropriate based on the Court's ruling, including any related depositions and to rely on the information obtained through the depositions.

## XI.   AMENDMENTS OF THE PLEADINGS

98.   First Quality does not intend to seek an amendment to the pleadings at this time.

99.   Irving hereby amends its pleading to dismiss the affirmative defenses of Prosecution Laches, Estoppel, Laches, Waiver, and Acquiescence at trial. First Quality does not oppose this amendment.

100.   Irving reserves the right to seek amendment of the pleadings (e.g., to add an inequitable conduct defense) as may be appropriate following the Court's ruling on its Objections to the Special Master's Orders regarding privilege and further discovery taken after that ruling. Irving also reserves its right to seek amendment of the pleadings, so that they conform to the Court's rulings on the pending motions and the evidence presented at trial. The good cause for permitting such amendment is that Irving has done everything possible to timely obtain the subject discovery, which awaits Court's ruling on its Objections to the Special Master's Orders regarding privilege. First Quality opposes any amendment of the pleadings to add additional defense(s), as the deadline for such amendment is long past, and any such amendment would be highly prejudicial, and Irving has not shown good cause.

## XII.   OTHER MATTERS

### A.   Length of Trial

101.   This matter is scheduled for a **5-day** jury trial beginning at **9:30 a.m.** on April 25, 2022, with the subsequent trial days beginning at 9:30 a.m. (*See* D.I. 15 ¶ 16; D.I. 258). This time includes the time needed to select a jury. Until the case is submitted to the jury for deliberations,

the jury will be excused each day at 4:30 p.m. (*Id.*).  The trial will be timed, as counsel will be allocated a total number of hours in which to present their respective cases. (*Id.*).

102.    Considering the Court's procedures for counting time, and considering the nature and extent of the parties' disputes, the parties request 26 hours for trial presentation, 13 hours per side.

103.    Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, its deposition designations played at trial (as set forth above), cross-examination of witnesses called by any other party, and closing arguments, and any arguments on any motions for judgment as a matter of law, and all sides' arguments on or objections a party raises (outside the presence of the jury) to another party's exhibits and demonstrative exhibits during the 9:30 a.m. to 4:30 p.m. trial days.

104.    The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all of its allotted trial time, the Court will terminate that party's trial presentation.

**B.     Number of Jurors**

105.    There shall be eight jurors.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers and addressing any challenges for cause, and concluding back in the courtroom with peremptory strikes.

**C.     Jury Notes and Jury Procedures**

106.    On the first day of trial, each member of the jury will be provided a binder (prepared by First Quality and approved by Irving after printing) containing the Patents-in-Suit, a chart with the Court's claim construction of terms in the Asserted Claims, [**Irving's Position:** the glossary

of patent terms contained in the preliminary jury instructions, photographs of the prior art tissues,][4] and a notepad for notes.

107.     The parties agree that the jurors shall be permitted to write notes by hand on their notepads during the trial, and that jurors be permitted to bring their provided binders and notepads into the deliberation room.  The parties further propose that the jurors' binders be collected by the clerk each evening after daily recess, and collected and destroyed without review after the jury's discharge.

### D.     Federal Judicial Center Introduction to the Patent System Video

108.     The parties stipulate that First Quality will provide the video and that it will be played as part of the Court's preliminary jury instructions, with any revisions required by the Court.

### E.     Handling of Confidential Information at Trial

109.     The parties anticipate that the majority of the trial will be open to the public and not sealed unless a party specifically requests that a particularly sensitive portion be sealed.  If a party makes such a request, subject to the Court's approval, and for good cause shown, the courtroom shall be cleared of those individuals not qualified under the Protective Order entered in this case, except that each party's corporate representative may remain in the courtroom throughout the entirety of trial.

---

[4] [**First Quality's Position:** Photographs of the prior art products would be unhelpful to the juror, as they do not show the claim limitations that are at issue in this case.  Any such photographs may be confused by the jurors as evidence.  As such, none should be provided in the Jury Notes.  First Quality also does not believe a glossary of patent terms is warranted, as it would be redundant with the patent video the jurors will have just heard.  Additionally, Irving's proposed glossary places undue emphasis and importance on particular aspects of the case, like the filing date, or aspects that are largely irrelevant, like a license.]  **[Irving's Position:** Photographs of the prior art products are necessary to maintain an appropriate balance in the jury binders.  First Quality's proposal, which contains the asserted patents without any reference to the prior art products, is improperly slanted towards First Quality's presentation of the evidence.]

### F.     Set-up of Electronic Equipment

110.     The parties request that the Court grant them access to the Courtroom on Friday, April 22, 2022, the business day before trial begins, to allow them to set up electronic and computer devices to be used during the trial.

111.     The parties will share any courtroom audio-visual equipment and will provide each other electronic versions of whatever they display immediately after the display.

## XIII.   NON-JURY TRIAL

112.     First Quality believes there are no non-jury issues to be tried.  Irving believes there are no non-jury issues to be tried, absent potential amendment to the pleadings referenced in paragraph 102 above.

## XIV.   MOTIONS FOR JUDGMENT AS A MATTER OF LAW

113.     The parties agree that for motions for judgment as a matter of law ("JMOL") generally, the party moving for JMOL will so move orally during a break at the close of all evidence out of the presence of the jurors.  The Court can then decide, based on the motions presented orally, whether to entertain argument and the timing of any briefing.  The parties also agree that any renewed JMOL motions will be addressed in connection with the schedule for post-trial briefing to be set by the Court, consistent with deadlines imposed by the Federal Rules of Civil Procedure.

## XV.     SETTLEMENT

114.     The parties attended a mediation with Magistrate Judge Thynge on July 31, 2020, but were unable to reach an agreement that would resolve this matter.  Pursuant to Magistrate Judge Thynge's order (D.I. 98), the parties jointly informed Magistrate Judge Thynge:  "The parties have conferred and, while Irving is willing to mediate, First Quality believes that further mediation would not be worthwhile until after the Court resolves the pending summary judgment

and *Daubert* motions.  First Quality believes that the parties are much farther apart than they were last July when the first mediation occurred and that resolution of these motions is necessary to facilitate meaningful settlement discussions."

IT IS HEREBY ORDERED that this Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

DATED: _____

_____
UNITED STATES DISTRICT JUDGE