IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

FIRST QUALITY TISSUE, LLC,

        Plaintiff,

    v.                                          Civil Action No. 19-428-RGA

IRVING CONSUMER PRODUCTS
LIMITED and IRVING CONSUMER
PRODUCTS, INC.,

        Defendants.

MEMORANDUM ORDER

I excluded Dr. Maness's original reasonable royalty calculation for failure to apportion, granting him leave to amend his report. (D.I. 313). Dr. Maness has now filed a supplemental report in which he offers "an alternate method for apportioning."[1] (D.I. 296-1 Ex. A at 5). Irving moves to exclude this revised opinion, arguing Dr. Maness still fails to apportion. I have considered the parties' briefing. (D.I. 295, 298, 305).

To calculate his revised royalty rate, Dr. Maness uses the economic benefits realized by Irving after switching to a lower basis weight paper for the bath tissue it supplied to Sam's Club as a proxy for the economic value attributable to the patented technology. (D.I. 296-1 Ex. A at 7-15). Dr. Maness justifies this approach by stating, "While the patented technology is not necessarily required to make tissue using lower-basis weight paper, my understanding is that it is

---

[1]     In his supplemental report, Dr. Maness also offers additional explanation for why he believes his original approach to apportionment was correct. (D.I. 296-1 Ex. A at 2-5). For the reasons explained in my March 30, 2022 memorandum opinion (D.I. 312), I am not persuaded by Dr. Maness's arguments and will not address them again here.

required to make lower basis-weight paper having the attributes required by Sam's Club." (*Id.* at 7). Dr. Maness explains, "Each of the purportedly non-patented features of the product that Mr. Malackowski points to were present in 2015 prior to the change in basis weight and after 2015," so, "focusing on the change in basis weight in 2015 controls for the impact of [non-patented] features such as methods of manufacture, quality, price, customer relationship, capacity, desire for multiple sources of supply, location of manufacture, ability to ship direct, size of rolls, packaging, price, discounting, and product placement . . . ." (*Id.* at 8).

Irving objects for several reasons. I am not persuaded by any of them.

First, Irving argues Dr. Maness's use of basis weight, a non-patented feature, as a proxy for the value of the patented features is improper. (D.I. 295 at 2). Irving complains, "the tissue's weight is not a patented feature," and Dr. Runge's testimony, on which Dr. Maness relies, "fails to support attributing weight reduction entirely to the patented technology." (*Id.*). I disagree. Dr. Maness's damages calculation is supported by Dr. Runge's opinion that using a lower basis weight tissue without using the patents in suit "would result in a tissue [product] that no longer closely matched the existing First Quality Member's Mark bath tissue, as required by Sam's Club." (D.I. 296-1 Ex. A at 7 (citing D.I. 200-4 ¶ 93)). The jury is free to credit or not to credit Dr. Runge's opinion. The issue here is merely whether it provides a reliable foundation for Dr. Maness's methodology. I find that it does.

Second, Irving argues, "Dr. Maness fails to show any nexus between the patents-in-suit and Irving's switch to lower weight paper," and, "There is not even circumstantial evidence from which a reasonable jury could infer that Irving's switch from 13.5 to 12.75 lb paper is tied to practicing the patents-in-suit." (D.I. 295 at 3). Again, I disagree. Dr. Maness establishes that "nexus" when

he cites Dr. Runge's opinion as the basis for his "understanding [] that [the patented technology] is required to make lower basis-weight paper having the attributes required by Sam's Club." (D.I. 296-1 Ex. A at 7).

Third, Irving argues, "even if there were some relationship between Irving's switch to lower basis weight paper and the patents-in-suit, Dr. Maness (again) fails to apportion any value to other features – apart from the purported invention – that contributed to the switch." (D.I. 295 at 4). Irving's argument misses the point. The reason Dr. Maness focuses on the change in basis weight is precisely to isolate the value of the patented technology from the value of non-patented aspects of the product, which were present both prior to and after the switch. This is how Dr. Maness approximates "the incremental value that the patented invention adds to the end product" – no further apportioning is required. *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). It is rare for a real-world example to exist that allows for a perfect comparison of the value of a product with and without patented features. Like almost any apportionment method, Dr. Maness's relies on estimation and assumptions. FQ will have the opportunity to identify and challenge any of those assumptions during cross examination and through the testimony of its own experts.

Finally, Irving argues Dr. Maness's comparison of Irving's gross margins for its sales to Sam's Club to its gross margins for its TAD tissue sales to other customers is flawed. Dr. Maness states that he is "isolate[ing] the impact of the change to lower basis weight paper." (D.I. 296-1 Ex. A at ¶ 21). Irving argues he is not, because he does not address what weight paper Irving supplies to other customers and does not consider other differences in the tissue supplied to Sam's Club versus other customers. (D.I. 295 at 5). I do not find this argument persuasive. The purpose

3

of Dr. Maness's comparison between Irving's gross margins for its sales to Sam's Club and its gross margins for its sales to other customers is to "account for possible changes in the broader marketplace" that may have occurred alongside Irving's switch to lower basis weight paper. (D.I. 296-1 Ex. A at 11). This comparison is simply an added check to control for potential confounding variables. If there are additional factors Irving believes Dr. Maness should have controlled for as part of that check, Irving can address them during cross examination.

For these reasons, Irving's motion to exclude Dr. Maness's supplemental damages report (D.I. 295) is DENIED. Pursuant to my previous ruling (D.I. 313), however, Dr. Maness may not offer testimony at trial relying on the portions of his supplemental report (D.I. 296-1 Ex. A at 2-5) that relate to his original "apportionment" method.

Entered this 5 day of April, 2022.

United States District Judge

4