IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FIRST QUALITY TISSUE, LLC,<br><br>              Plaintiff,<br><br>    v.<br><br>IRVING CONSUMER PRODUCTS LIMITED and IRVING CONSUMER PRODUCTS, INC.,<br><br>              Defendants. | C.A. No. 19-428-RGA<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF FIRST QUALITY TISSUE, LLC'S
REPLY BRIEF IN SUPPORT OF RENEWED MOTION FOR JUDGMENT
AS A MATTER OF LAW UNDER FED. R. CIV. P. 50(b) OR NEW TRIAL**

FISH & RICHARDSON P.C.
Warren Keith Mabey, Jr. (No. 5775)
Joseph B. Warden (No. 6604)
Nitika Gupta Fiorella (No. 5898)
Kelly A. Del Dotto (No. 5969)
Casey M. Kraning (No. 6298)
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: 302-652-5070
mabey@fr.com; warden@fr.com;
fiorella@fr.com; kad@fr.com;
kraning@fr.com

Edmond R. Bannon
Jeffrey C. Mok
FISH & RICHARDSON P.C.
7 Times Square 20th Floor
New York, NY 10036
Telephone: (212) 765-5070
Email: bannon@fr.com; jmok@fr.com

                Ethan J. Rubin
                FISH & RICHARDSON P.C.
                One Marina Park Drive
                Boston, MA 02210-1878
                Telephone:  (617) 542-5070
                erubin@fr.com

                *Attorneys for Plaintiff*
                *First Quality Tissue, LLC*

Dated:  August 5, 2022

# **TABLE OF CONTENTS**

**Page**

1. First Quality's Motion is Not Moot ................................................................................... 1

2. There Is No Clear And Convincing Evidence That The 2010 Charmin Ultra Soft Met The Claimed Surface Properties During The Critical Period ..................................................... 3

3. Mr. Kavalew's Uncorroborated Testimony Regarding Softness Is Not Substantial Evidence of Anticipation ..................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*,
   509 U.S. 209 (1993)..................................................................................................6

*Cardinal Chemical Co. v. Morton Intern., Inc.*,
   508 U.S. 83 (1993)................................................................................................2, 3

*Finnigan Corp. v. Int'l Trade Comm'n*,
   180 F.3d 1354 (Fed. Cir. 1999)...............................................................................10

*Fort James Corp. v. Solo Cup Co.*,
   412 F.3d 1340 (Fed. Cir. 2005).................................................................................2

*Homeland Housewares, LLC v. Whirlpool Corp.*,
   865 F.3d 1372 (Fed. Cir. 2017).................................................................................6

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
   381 F.3d 1142 (Fed. Cir. 2004).................................................................................5

*Netscape Commc'ns Corp. v. ValueClick, Inc.*,
   704 F. Supp. 2d 544 (E.D. Va. 2010) .....................................................................10

*NewRiver, Inc. v. Newkirk Prod., Inc.*,
   674 F. Supp. 2d 320 (D. Mass. 2009) ......................................................................5

*Noven Pharm., Inc. v. Amneal Pharm. LLC*,
   2020 WL 11191445 (D. Del. Sept. 4, 2020)............................................................7

*Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*,
   756 F. Supp. 2d 598 (D. Del. 2010).........................................................................3

*Schumer v. Lab'y Computer Sys., Inc.*,
   308 F.3d 1304 (Fed. Cir. 2002).................................................................................5

*St. Jude Med. Cardiology Div., Inc. v. Volcano Corp.*,
   2013 WL 4517534 (D. Del. Aug. 22, 2013) ............................................................3

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
   655 F.3d 1364 (Fed. Cir. 2011).................................................................................8

*W.L. Gore & Assocs., Inc. v. Garlock, Inc.*,
   721 F.2d 1540 (Fed. Cir. 1983).................................................................................2

This motion is about fundamental deficiencies in Irving's attempt to use present-day measurements on an old sample of 2010 Charmin Ultra Soft to prove it satisfied claimed properties during the critical period, over ten years ago. While Irving's Answering Brief ("Ans.") frames the issue as asking the Court to "credi[t] the testimony from FQ's expert over the testimony from Irving's expert," (Ans. at 13), that is not the case. It is Irving's own expert, Dr. Keller, who conceded that there are "a lot of conditions" in which bath tissue degrades. Tr. at 897:23-898:5. Irving does not challenge this. It is Irving's own experts who lack information on how the physical sample was stored over the last decade. It is Irving's own internal document, also unchallenged, that describes aging of tissue and its potential to affect pattern definition. PTX-414. And it is Irving's Dr. Keller who unambiguously responded "No," when asked if he actually knows whether the claimed Pa and Wc properties have changed in the past 12 years. Tr. at 904:16-21.

Because, as Dr. Keller admits, it is unknown whether claimed properties have changed, it is impossible to know whether the 2010 Charmin Ultra Soft actually met the claims during the critical period. And this uncertainty means the jury's verdict lacked substantial evidence under the clear and convincing standard required to overcome a patent's presumption of validity.

1. **First Quality's Motion is Not Moot**

The jury's finding of non-infringement does not moot the issue of invalidity. Irving knows this. Indeed, despite the jury finding of no infringement, Irving moved for renewed JMOL of invalidity based on indefiniteness and a lack of written description. *See* D.I. 404. Thus, Irving does not even subscribe to its own argument.[1]

Putting that aside, Irving latches onto and mischaracterizes footnote 5 of the Opening brief.

---

[1] Contrary to Irving, First Quality does not "conced[e] that the Court's claim construction rulings precluded a finding of infringement." Ans. at 5. Instead, the Court's construction precluded some infringement arguments, but not others.

1

*See* D.I. 409 at 18 n.5 ("First Quality respectfully provides this brief explanation for the sake of clarity and to avoid any potential doubt that First Quality's requested relief on anticipation is rendered moot by the jury's finding of no infringement."). The footnote is plainly about avoiding any potential doubts about mootness, not conceding mootness, as Irving claims. *See id.* at 18.[2]

Established law directly undermines Irving's mootness argument. "A party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement." *Cardinal Chemical Co. v. Morton Intern., Inc.*, 508 U.S. 83, 96 (1993). Irving's anticipation argument at trial took the form of a counterclaim (*i.e.*, request for declaratory judgment of invalidity), and therefore the jury finding of no infringement is separate and apart from Irving's counterclaim for a declaratory judgment of invalidity. D.I. 387 (Trial Verdict) at 1. The jury's finding on infringement has no bearing on Irving's counterclaim of invalidity.[3]

In *Cardinal Chem.*, the Supreme Court reviewed the Federal Circuit's previous practice of refusing to address the question of validity when it had already affirmed a finding of non-infringement. *Cardinal Chem.*, 508 U.S. at 90-92. The Federal Circuit's practice was based on the misunderstanding that where there was a finding of non-infringement, "the declaratory judgment [of invalidity] is 'moot' in a jurisdictional sense." *Id.* at 92. The Supreme Court corrected this misunderstanding, and ruled that "a finding of noninfringement alone … does not

---

[2] Likewise, Irving has no basis for its argument that a reversal of the non-infringement finding on appeal "would require the Court to evaluate FQ's motion under a claim construction that would be even more favorable to Irving for anticipation." D.I. 416 at 6.

[3] *See also Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348 (Fed. Cir. 2005) ("a counterclaim questioning the validity or enforceability of a patent raises issues beyond the initial claim for infringement that are not disposed of by a decision of non-infringement."); *W.L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1559 (Fed. Cir. 1983) ("The better practice would therefore be for the district court to decide both the validity and infringement issues when both are contested at the trial, enabling the conduct of a single appeal and disposition of the entire case in a single appellate opinion.").

2

justify" the Federal Circuit's "refusal to reach the merits of a validity determination." *Id.* at 102-103. The Supreme Court cited "a strong public interest in the finality of judgments in patent litigations," "the importance to the public at large of resolving questions of patent validity," and a patentee's interest in having a "full and fair opportunity to have the validity issue adjudicated correctly." *Id*. at 100-102. These same interests favor First Quality here. Resolving the issue of validity now would provide First Quality with a full and fair opportunity to have the validity issue adjudicated by this Court, and even if the Court were to find in favor of Irving, that would at least provide a clean record on *both* infringement and validity for the Federal Circuit to consider.

All of Irving's cases are plainly inapposite.[4] The Court should rule on First Quality's motion for JMOL and/or a new trial.

### 2. There Is No Clear And Convincing Evidence That The 2010 Charmin Ultra Soft Met The Claimed Surface Properties During The Critical Period

Turning to the merits, Irving tries to brush aside Dr. Keller's admission that he does not actually know whether the claimed Pa and Wc properties have changed over the last decade, arguing that First Quality "misrepresents the record." But the admission is unambiguous. As reflected in the full excerpt already provided in the Opening brief, Dr. Keller answered with an unqualified "No" when asked if he actually knew whether the claimed properties had changed in the past 12 years. Tr. at 904:16-21. He went on to explain that it was because he does not have a "direct comparison with the 2010." *Id*.

---

[4] Unlike in *Nasatka v. Delta Sci. Corp.*, resolution of the invalidity issue here **would** have an "impact on the further progress of this case at the trial court," because it would resolve Irving's counterclaim of invalidity. 58 F.3d 1578, 1581 (Fed. Cir. 1995). And neither *Roche Diagnostics* nor *St. Jude Med.* are relevant because in those cases, unlike here, the JMOL motions were moot because the jury had already returned a verdict **in favor** of the party moving for JMOL. *See Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 756 F. Supp. 2d 598, 600 (D. Del. 2010); *St. Jude Med. Cardiology Div., Inc. v. Volcano Corp.*, 2013 WL 4517534, at *7 (D. Del. Aug. 22, 2013). *Laitram Corp*. does not help Irving either, because there the Federal Circuit held that the motion for JMOL was not moot and the movant was entitled to a decision on it.

3

Dr. Keller's admission is fatal because in admitting that he does not know whether the claimed Pa and Wc properties have changed, he is admitting that he does not know what the claimed properties were during the critical period. Irving has present-day values for Pa and Wc for its samples—if Dr. Keller had any idea, at all, of what the values were during the critical period, he would know whether they have changed or not.

This gap in information about claimed properties of the prior art during the critical period makes this case analogous to *Union Carbide*, where JMOL overturning a jury verdict of invalidity was granted and affirmed based on a prior art witness' admission on cross-examination, tantamount to Dr. Keller's admission, that she did not know "with certainty" whether the prior art included a claimed feature. 308 F.3d 1167, 1189 (Fed. Cir. 2002).

Irving tries to dismiss *Union Carbide* and the issue of Dr. Keller's admission by pointing to *Mr. Kavalew's* testimony that allegedly "properties were unchanged since 2010." Ans. at 19. But that testimony cannot be clear and convincing because it is highly generalized and conclusory (Tr. at 944:11-945:18), comprised of general assertions that the prior art sample "looks like" a new roll, and that it "feels like nothing's changed," without any concrete comparison to any sample Mr. Kavalew saw or felt during the critical period, and without any support that changes in specific claimed properties can be seen or felt (with at least Dr. Keller testifying that they cannot be (Tr. at 902:16-903:13)). The testimony also comprised general claims about tissue being "shelf stable" and having "an indefinite shelf life," without any linking of shelf stability or life to the claimed properties. Tr. at 946:4-7. And the testimony comprised statements about caliper measurements on the prior art sample being vaguely "right in the same range" as measurements made on other samples in the past, and strength measurements being vaguely "right in the middle" of past measurements, without any explanation about how present measurements can be compared to past

4

measurements on admittedly *different* rolls or how numbers that are plainly different can be considered "unchanged." Tr. at 947:17-950:4.

None of the above conclusory and general testimony, from a witness who admittedly does not "have any expertise on aging of tissues," or even remembers "ever reading anything specifically about tissue aging" (Tr. at 993:16-994:3), can overcome Dr. Keller's admission that he lacks knowledge about the claimed properties during the critical period. *See Schumer v. Lab'y Computer Sys., Inc.*, 308 F.3d 1304, 1316 (Fed. Cir. 2002) ("[T]to accept confusing or generalized testimony as evidence of invalidity is improper. The risk is great that the confusion or generality is the result, not of an inarticulate witness or complex subject matter, but of a witness who is unable to provide the essential testimony."); *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004) ("General and conclusory testimony[,] does not suffice as substantial evidence of invalidity."). More is required to support a jury verdict on invalidity. *See NewRiver, Inc. v. Newkirk Prod., Inc.*, 674 F. Supp. 2d 320, 333 (D. Mass. 2009) ("*Koito* and the cases cited therein, however, make clear that, on the issues of anticipation, obviousness, and doctrine of equivalents, the unsupported opinion even of a qualified expert is simply not 'substantial evidence' adequate to support a jury verdict on those issues."). Indeed, this same "evidence" was considered by Dr. Keller, and yet even he admitted he did not know whether the claimed properties of the prior art sample had changed since the critical period. There is no basis for a lay jury to draw inferences that Dr. Keller could not.

Aside from Dr. Keller's admission, Irving's other arguments that the 2010 Charmin Ultra Soft is unchanged are unsupported; Irving's Answer points to nothing to rectify the deficiencies discussed in the Opening. Irving's theory that present-day measurements on caliper, roll diameter, and strength "matched the data for Charmin Ultra Soft samples recorded around 2010," is

5

contradicted by Irving's own data.[5] As discussed in the Opening, the present-day measurements simply do not match the past ones.[6]

Irving accuses First Quality of quibbling about a "hundredth of a micron," (Ans. at 16), but that is not the case. On caliper, for example, the present-day measurements on the 2010 Charmin Ultra Soft differ from the past measurements by tens of microns (a thousand times a "hundredth of a micron). *Compare* DDX-4 at 21 (showing Mr. Kavalew's present-day measurement of 386.8 microns) with Tr. at 839:9-840:4 (Mr. Keller explaining that Charmin Ultra Soft was measured in 2011 to have caliper of 346.32 microns). Similarly, for the strength property, Irving does not dispute that the present day measurement of 174.3 is not the same as the past measurements. Tr. at 949:12-19. Irving's experts glossed over all of this. Their opinions that caliper and strength "remained unchanged" is unsupported and cannot support the jury's verdict. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); *Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1378 (Fed. Cir. 2017).

Irving argues a "reasonable jury was entitled to conclude that Charmin Ultra Soft had not changed based on Mr. Kavalew's testimony that Charmin Ultra Soft in 2020 had a tensile strength

---

[5] Irving now argues that each of caliper, roll diameter, and strength "independently" confirms that the Charmin Ultra Soft 2010 has not changed. That is unsupported. It is also contradicted by Dr. Keller, who testified that the metrics were considered together. *See* Tr. at 905:5-906:2 ("…if I saw the bulk had not changed **and** the tensile strength had not changed, then that would be indicative that the properties for Wc and Pa would be the same.") (emphasis added).

[6] Irving also points to Dr. Keller's testimony about the tissue being made of paper fibers designed to be allegedly "permanent and stable." Ans. at 13. But this testimony plainly pertained to fibers, and not to the overall tissue and the claimed properties. Dr. Keller clarified on cross-examination that such tissues are not permanent and that there are a lot of conditions in which such tissues would degrade. Tr. at 897:17-898:5.

of 174.3—'right in the middle of' the range recorded in 2010-2011 (between 159 and 188)." Ans. at 17.  Irving makes a similar argument for caliper, arguing "the historical value is squarely within the present-day range." Ans. at 16.  Irving is wrong.  Such conclusions would rely on several "unproven assumptions" of the type found insufficient for an invalidity finding in *Noven Pharm., Inc. v. Amneal Pharm. LLC*, 2020 WL 11191445, at *40-41 (D. Del. Sept. 4, 2020).

In *Noven*, defendant's expert concluded that a prior art product met three disputed limitations. *Id.*  Because testing for each of the limitations was destructive, the expert relied on data and statistical analysis to calculate the likelihood that at least a single sample of the prior art product met all of the disputed limitations. *Id.*  The Court found that the expert failed to prove that the three limitations are "independent events" from a statistical perspective such that their probabilities could be multiplied together to calculate this likelihood. *Id.*  Thus, the expert's anticipation opinions, based on multiplying the probabilities using an unproven assumption that they are independent events, failed to meet the clear and convincing evidence standard. *Id.*  Here, Irving's experts did even less than the expert in *Noven*.  Neither Dr. Keller nor Mr. Kavalew offered any analysis, statistical or otherwise, in comparing the measurements of the prior art 2010 Charmin Ultra Soft sample with the measurements of historical samples.  Instead, they relied on many unproven assumptions—for example an assumption that the prior art sample did not fall in one part of the caliper or strength ranges during the critical period and fall in another part of the ranges in the present day; and an assumption that the prior art sample and the historical samples can be compared without accounting for admitted "roll-to-roll differences" (Tr. at 846:24-847:12); and an assumption that the prior art sample was stored in "reasonable" conditions, even though the Proctor & Gamble custodian explained that there were no environmental controls in storage, and also that she did not know whether the sample was subjected to temperatures and humidity changes

7

(*see e.g.*, Tr. at 787:20-22, 786:23-787:14).

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1377-1378 (Fed. Cir. 2011) is also instructive. That case is not about "flawed testing equipment," as Irving argues. In *Star Scientific*, the asserted patents required a chemical compound to be below 0.05 ppm or 0.10 ppm. *Id.* Several prior art samples that were tested came back with a 0.00 reading, and defendant's expert testified that those samples anticipated. *Id.* However, the expert testified that the testing detection limit was 0.15 ppm. *Id.* The Court found that the testing could not serve as clear and convincing evidence, because a "0.00" reading only provided that the compound is below the 0.15 ppm detection limit rather than below the 0.05 ppm or 0.10 ppm claim requirements. *Id.* In other words, even though defendant's expert concluded claim requirements were met, he did not actually know from the 0.00 reading whether the claim requirements were met, and that was insufficient. Similarly, here, although he concluded that the claimed properties were unchanged, Dr. Keller admitted that he did not actually know whether the claimed properties of the 2010 Charmin Ultra Soft had changed since the critical period because he did not "have a direct comparison with the 2010." Tr. at 904:16-21.

Irving's caselaw is inapposite. Unlike here, the record in *Leader Technologies, Inc. v. Facebook, Inc.* was "not devoid of the minimum quantity of evidence to support the jury's verdict." 678 F.3d 1300, 1306 (Fed. Cir. 2012). In *Leader*, (1) a pre-critical date document specifically described embodiments of the asserted patent; and (2) there was testimony that the patentee had integrated the patented technology into the prior art before the critical date. *Id*. at 1306-07. Here, in contrast, Irving did not present any actual evidence of the claimed Pa and Wc values of the 2010 Charmin Ultra Soft from before the critical date. Tr. at 1157:10-17; Opp. at 19 ("No such data exists."). And its attempts to infer those values are far from clear and convincing evidence,

8

because, as discussed, Dr. Keller admitted to not knowing whether the values have changed, and because all of Irving's evidence was conclusory or unsupported.

*Innovation Sciences, LLC v. Amazon.com, Inc.*, cited in Irving's notice of supplemental authority (D.I. 417), is also different. Case No. 21-2111 (Fed. Cir. July 20, 2022). There, the jury was "presented documentary and video evidence" of the prior art system as it existed before the priority date. *Id.* at 6. Here, in contrast, Irving did not present the jury with any of the values for the claimed surface properties of the 2010 Charmin Ultra Soft from before the priority date.

Despite the professed strength of its evidence, Irving resorts to pure attorney argument. In particular, Irving leans heavily on the argument that because Dr. Runge found "30% degradation," in the 2010 Charmin Ultra Soft, and because the 2010 Charmin Ultra Soft would still be within the scope of the claims after a 30% increase to the claimed properties, this is proof that the 2010 Charmin Ultra Soft anticipates. Ans. at 6-7, 21-22. Yet, none of Irving's experts endorsed this argument. In addition, Irving is wrong because Dr. Runge never opined on some vague idea of 30% overall degradation. Instead, Dr. Runge found there was 30% degradation in *caliper*. Tr. at 1061:2-6. There is no evidence, from anybody, that degradation in caliper has a linear relationship with degradation in other properties, in particular the claimed properties. Irving's argument that one could just tack on 30% to a claimed property to account for a 30% change in caliper is pure speculation, and cannot support a jury verdict of anticipation.

None of the above deficiencies in Irving's evidence requires the Court to reweigh the evidence. First Quality's expert, Dr. Runge, need not be credited, although his testimony adds to the great weight of the evidence against Irving. First Quality's motion should be granted.

### 3. Mr. Kavalew's Uncorroborated Testimony Regarding Softness Is Not Substantial Evidence of Anticipation

On the softness limitations, Mr. Kavalew provided no documentary evidence—no photos,

no videos, no hardcopy test results, nothing. And Irving does not dispute that it improperly withheld such evidence. All the jury had was Mr. Kavalew's oral statements. That is not enough. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999).

Irving tries to justify Mr. Kavalew's uncorroborated testimony by arguing that his testing "was recorded in expert reports and pressure-tested in deposition…." Opp. at 19-20. That is irrelevant, because neither his reports nor his deposition were entered into evidence.[7] D.I. 385, 386. There is also nothing that a jury could have gleaned from the physical prior art product. The product itself suggests nothing about how Mr. Kavalew tested it, and the jury certainly could not have measured the softness or bulk softness of the tissues simply by touching them, because such measurements require the use of a machine that was not provided to the jury.

Irving's cases are inapt. *Thomson S.A. v. Quixote Corp.* predates *Finnigan*, and "courts have increasingly concluded that *Thomson* has been overruled by implication, and therefore the *Finnigan* corroboration requirement applies in **all circumstances**." *Netscape Commc'ns Corp. v. ValueClick, Inc.*, 704 F. Supp. 2d 544, 554 (E.D. Va. 2010) (emphasis added). Thus, *Finnigan* is not limited to a "witness who testified to antedating the invention of the patent-in-suit," as Irving argues. *See* Opp. at 23. *Thompson* is also distinguishable because there, unlike here, the testimony was supported by exhibits and documents. 166 F.3d 1172, 1174 (Fed. Cir. 1999). And *Nobel Biocare Servs. AG v. Instradent USA, Inc.* held only that a prior art product itself could be evidence of its public availability—a very different situation. 903 F.3d 1365, 1378 (Fed. Cir. 2018). There is no sufficient evidence for a jury to find that the softness limitations were met.

---

[7] Irving also references Ms. Lamanna, but cites nothing from her testimony that is corroborating.

Dated: August 5, 2022

FISH & RICHARDSON P.C.

By: */s/ Warren Keith Mabey, Jr.*
    Warren Keith Mabey, Jr. (No. 5775)
    Joseph B. Warden (No. 6604)
    Nitika Gupta Fiorella (No. 5898)
    Kelly A. Del Dotto (No. 5969)
    Casey M. Kraning (No. 6298)
    222 Delaware Avenue, 17th Floor
    Wilmington, DE 19801
    Telephone: 302-652-5070
    Facsimile   302-652-0607
    mabey@fr.com; warden@fr.com;
    fiorella@fr.com; kad@fr.com;
    kraning@fr.com

    Edward R. Bannon
    Jeffrey C. Mok
    FISH & RICHARDSON P.C.
    7 Times Square, 20th Floor
    New York, NY 10036
    Telephone: (212) 765-5070
    Facsimile: (212) 259-2291
    bannon@fr.com; jmok@fr.com

    Ethan J. Rubin
    FISH & RICHARDSON P.C.
    One Marina Park Drive
    Boston, MA 02210-1878
    Telephone: (617) 542-5070
    Facsimile: (617) 542-8906
    erubin@fr.com

*Attorneys for Plaintiff*
*First Quality Tissue, LLC*