IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FIRST QUALITY TISSUE, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-428-RGA |
| | : | |
| IRVING CONSUMER PRODUCTS LIMITED, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

After a jury trial, the parties have filed three motions. Defendants filed an exceptional case motion for attorneys' fees. (D.I. 393; briefed at D.I. 394, 407, 412). Defendants filed a renewed motion for judgment as a matter of law. (D.I. 404; briefed at D.I. 406, 415, 418). Plaintiff filed a motion for judgment as a matter of law and for a new trial. (D.I. 405; briefed at D.I. 409, 416, 419).

Plaintiff lost at trial, as the jury found the asserted claims both invalid and not infringed. (D.I. 387). I consider Plaintiff's motion first.

<u>Plaintiff's motion (D.I. 405).</u>

The jury found that 2010 Charmin Ultra Soft anticipated all claims. It is undisputedly prior art. Plaintiff argues that Defendants' testing in 2020 could not prove anticipation by the 2010 Charmin Ultra Soft because the "surface roughness limitations" change over time. (D.I.

409 at 4). Plaintiff made that argument to the jury.[1] The jury rejected it. The jury had a basis to find anticipation, because Defendants presented evidence the 2010 Charmin Ultra Soft had the "same properties" in 2020 as it did in 2012. (*See* D.I. 416 at 4-5 (summarizing trial evidence)). There is substantial evidence supporting the validity of the 2020 testing to indicate the properties of the 2010 Charmin Ultra Soft at the relevant time period.

Plaintiff argues that Defendants failed to present evidence that the 2010 Charmin Ultra Soft met certain limitations of the claims because the testimony of Defendants' experts was not "corroborated." (D.I. 409 at 13).[2] I agree with Defendants that the 2010 Charmin Ultra Soft itself is corroborating evidence, which Plaintiff could have tested if it had thought that it was in its best interest to do so.[3] Thus, I will not grant Plaintiff's motion for a JMOL.

Plaintiff states that it is going to appeal the claim construction for the term "outer surface." (D.I. 409 at 14-16). It appears to state its argument for the sole reason of making sure that I do not conclude its argument about anticipation is mooted by the non-infringement verdict. (*Id.* at 14 n.5). Defendants request that I consider the JMOL motion moot. (D.I. 416 at 7-8). I think the better course is to consider the anticipation counterclaims (D.I. 387) since they have been presented to me and will undoubtedly be presented to the Federal Circuit in due course.

---

[1] Plaintiff at closing argument: "[Y]ou should decide which experts to believe and use your common sense in coming to your decision." (D.I. 403 at 23:23-24). When Plaintiff reached "anticipation," its sole argument was the "change over time" argument. (*Id.* at 31:17-33:25).
[2] The cases Plaintiff cites, *Finnigan Corp. v ITC*, 180 F.3d 1354 (Fed. Cir. 1999), and *Juicy Whip, Inc. v. Orange Bang, Inc.*, 292 F.3d 728 (Fed. Cir. 2002), do not stand for the proposition that an expert's testimony about his testing results needs to be "corroborated" in order for a defendant to be able to prove an invalidity defense
[3] I have my doubts that Plaintiff's corroboration argument makes any sense. There is discussion in the briefing about photos, videos, hardcopy test results, expert reports, and depositions. (D.I. 419 at 9-10). Expert reports and depositions are not corroboration, but they certainly provide a process that permits the opposing side to challenge expert testimony. In the classic sense, corroboration is independent proof that what a witness says is true. It's hard to imagine how photos, videos, or hardcopy test results (presumably all under the control of the expert) would constitute independent proof in a case like this one.

Plaintiff requests that "in the alternative," I grant a new trial. (D.I. 409 at 16). Plaintiff does not, however, make any argument as to why I should exercise my discretion to grant a new trial. Thus, I will not grant a new trial.

I now turn to Defendants' two motions.

Defendants' JMOL motion (D.I. 404).

The jury found for Plaintiff on Defendants' written description and indefiniteness arguments. (D.I. 387). I stated my view on Defendants' arguments after listening to an oral request for a JMOL. "I think the written description and indefinite arguments are things that should have been dropped [by Defendants] but they haven't been. And while I think that maybe they're pretty weak, I think it would be better to get a jury verdict on them." (D.I. 402 at 1018:19-23). The jury agreed with my assessment. The post-trial briefing on those arguments has not changed my mind. Thus, I will deny Defendants' JMOL motion.

Defendants' motion for exceptional case (D.I. 393).

Defendants are the prevailing party.

Although Defendants spent $13,000,000 on attorneys' fees,[4] it appears that they only seek about $3,900,000. (D.I. 394 at 20). They say there are three reasons why the case is exceptional. First, after claim construction in January 2022, Plaintiff could not prove infringement and should have stipulated to non-infringement. Plaintiff misrepresented its infringement positions to go to trial. Second, Plaintiff's validity position was weak. Third, Plaintiff changed its position on how Defendant infringed *willfully*.

Usually, the parties to a patent case agree to postpone exceptional case consideration until after the appeal to the Federal Circuit is resolved. This makes sense for several reasons,

---

[4] Defendants state that the $3,900,000 spent after the claim construction order that should have ended the case was 30% of their total fees. (D.I. 394 at 9; *see also id.* at 20).

including: (1) the Federal Circuit may vacate or reverse the district court's judgment, making the exceptional case exercise moot; and (2) even if the Federal Circuit affirms, it may issue an opinion that makes the exceptional case determination much simpler (for example, the Court may affirm in a precedential opinion, which would likely indicate that there was at least one close or difficult issue in the case). In the instant case, however, neither side suggests postponement of the issue. Thus, under the circumstances of this case, I will decide the motion without waiting to see the results of the appeal.

Infringement. Defendants say it was obvious from my claim construction order of January 21, 2022 (D.I. 275) that Plaintiff could not win its case in light of my construction of "outer surface." Trial began April 25, 2022, that is, about three months later.

One thing that is missing from Defendants' argument (which I usually see when a party states that the other side should have capitulated) is any evidence that Defendants contemporaneously came to that conclusion. I am often presented with correspondence where the winning party tells the losing party it is going to lose and that it should dismiss its case or stipulate to non-infringement or the like. The absence of such correspondence (as is the case here) suggests that Defendants' position suffers from hindsight bias.

Defendants in their reply brief quote Plaintiff twice from its opening brief on a different motion as stating, "the Court's ruling on 'outer surface' incorrectly precluded a finding of infringement." (D.I. 412 at 1, 7, quoting D.I. 409 at 15) (emphasis deleted from first quote; "incorrectly" substituted for ellipsis in second quote). Defendants interpret this as a concession that Plaintiff knew it could not prove infringement. I disagree. While not entirely clear, it appears to me that Plaintiff's sentence, in the context of the paragraph in which it appears (D.I. 409 at 15-16), was meant to argue Plaintiff had a slam dunk winner under its construction, not

that it had no chance under the Court's construction. Defendants also point out that Plaintiff did not seek JMOL on the jury's non-infringement finding (D.I. 412 at 1), but that is meaningless. It does not follow from the reasonable decision not to argue an obvious loser ("no reasonable jury could fail to find infringement") that Plaintiff is conceding the converse ("no reasonable jury could find infringement"). There is a lot of middle ground between those two extremes.[5]

In terms of the evidence of infringement, the basic dispute at trial was which expert's testing to accept. Plaintiff argued the jury should rely upon Dr. Runge. (D.I. 403 at 22:14-17). His testimony did literally check every box for a finding of infringement. Defendants argued the jury should rely upon Dr. Keller. (*Id.* at 44:20-45:17). Defendants argued that Dr. Runge's testimony was unreliable. (*Id.* at 41:2-3). The credibility of expert testimony is a question for the jury. That the jury did not find Dr. Runge's testimony sufficient to prove infringement does not show that Plaintiff should have conceded non-infringement before trial. And I do not see misrepresentation of Plaintiff's infringement opinions.

Invalidity and Willfulness. I do not think Defendants seriously press their second and third arguments.

On invalidity, Defendants had the burden of proof and had to convince the jury by clear and convincing evidence that ten-year old toilet paper had not degraded so as to make Defendants' experts' testing and analysis unreliable. While I agree with the verdict of anticipation, I do not think it was a foregone conclusion. At the time when the evidence was fresh in my mind, my view was, "[I]t's pretty close to frivolous to argue [on Defendants' oral motion for JMOL] that there's not a jury issue on the anticipation [issue]." (D.I. 402 at 1071:20-

---

[5] I give credit to Plaintiff's lawyers for deciding not to make an argument with no reasonable chance of winning. I am constantly surprised at how few civil litigators understand that showing such judgment makes one a more effective advocate.

21). As a side note, Defendants advanced two other invalidity theories, both of which failed at trial. I do not think Plaintiff's positions on invalidity contribute at all to making this an exceptional case.

On willfulness, I note that Defendants did not move for summary judgment of no willfulness.[6] (D.I. 197). I denied Defendants' motion for JMOL of no willfulness (D.I. 379) with the comment that "it's a pretty close case or pretty close, I guess, as to whether or not I should grant this." (D.I. 402 at 1088:5-10). I further note that the requirement for willfulness is pretty straightforward—deliberate and intentional infringement.

There is no dispute that Defendants were aware of Plaintiff's patents. Rather, Defendants' argument is that Plaintiff "shift[ed] its willfulness theory." (D.I. 394 at 18-20; D.I. 412 at 9). Plaintiff had a theory in discovery; it was abandoned. Dr. Runge's expert report said "copying." At trial, Plaintiff argued "reverse engineering."[7] Defendants' briefs do not cite to any place in the trial record where Defendants raised this as an issue. (D.I. 394 at 18-20; D.I. 412 at 9-10). As I stated at the time, I had doubts that the willfulness argument was viable. But I do not think a weak willfulness argument makes for an exceptional case. I also doubt that it contributed in any substantial way to increasing Defendants' expenditures on attorneys' fees.

I do not think Defendant's exceptional case arguments, taking all three of them into consideration together, support finding that this is an exceptional case. I will therefore deny the exceptional case motion.

I will enter a separate order.

United States District Judge
3/9/23

---

[6] There were page limitations in the summary judgment briefing. Thus, Defendants may not have urged it at summary judgment because there were other arguments that, for one reason or another, they preferred to make.
[7] I am not sure there is much of a difference between copying and reverse engineering.